FREDERICK LEWIS v. FLINT & PERE MARQUETTE RY CO.

*Railway companies—Proximate cause of injury.*

1. A railway passenger was carried a little past his station on a dark night, and on leaving the train was misinformed by the conductor as to where he was. He soon discovered that he was south of a cross-road he meant to take in going home, instead of north of it as he was told when he landed. He knew the neighborhood and knew that where the road crossed the track there were cattle-guards and culverts on both sides of it. If he had landed where he was told he had, he had meant to follow the track south to the road and pick his way across the culvert though he might have shunned it by taking a side path. In approaching the road from the south he determined to cross the other culvert in the same way, and it is not clear that on that side of the road he could have done any better. But when he neared the cattle-guard, his eyes deceived him and his foot slipped, and in trying to regain his balance he fell into the culvert, which he supposed was farther off, and was seriously hurt. *Held*, that the company's negligence in carrying him past the station and in misinforming him was not the proximate cause of the injury, which was purely accidental, and he could not recover for it.

2. Damages cannot be recovered for purely accidental injuries.

3. In an action for injury the courts cannot go back of the proximate cause, and as between other causes preceding that, select one rather than other upon which to permit a recovery.

4. In an action for injury the neglect of any precaution by the plaintiff can only raise a question of contributory negligence for the jury.

Error to Wayne.   (Speed, J.)   April 10–11.—June 11.

CASE.   Plaintiff brings error.   Affirmed.

*Blodget & Patchin* and *C. I. Walker* for appellant.   The rule as to proximate damages is more liberal in cases of tort than in cases of contract: Shearm. & Redf. on Damages § 597; Sedg. Damages § 9; Field on Damages § 660; Thompson on Carriers 545; *Bowas v. Pioneer Tow Line* 2 Sawy. 30; *Brown v. Chic. & St. Paul Ry. Co.* 54 Wis. 354; such an injury as is done by a fire that catches from a house which was set on fire by negligence is not too remote to sustain a recovery against the original wrong-doer: Cooley on Torts 76; Field on Damages 46; 1 Thomp. Neg. 169; Whart. Neg. §§ 148, 156; *Smith v. Lond. & S. W. R. R. Co.* L. R. 6 C. P. 20; *Milw. R. Co. v. Kellogg* 94 U. S. 473; *Kellogg v. C. & N. W. Ry. Co.* 26 Wis. 262; *Fent v. T. P. & W. R. Co.* 59 Ill. 349; *Wiley v. West Jersey R. Co.* 44 N. J. L. 247.

*W. L. Webber* and *O. F. Wisner* for appellee cited on proximate cause *Blake v. Newfield* 68 Me. 365; *Hyde v. Jamaica* 27 Vt. 458; *Trow v. Vt. Cent. R. R.* 24 Vt. 494; *People v. Rockwell* 39 Mich. 503; *Mich. Cent. R. R. v. Burrows* 33 Mich. 6; *Morrison v. Davis* 20 Penn. St. 171; *Flower v. Adam* 2 Taunt. 314; *The Dubuque Wood Ass'n v. Dubuque* 30 Ia. 176; *Marble v. City of Worcester* 4 Gray 395; *Stiles v. A. & W. P. R. R.* 65 Ga. 370: 8 A. & E. R. R. Cas. 195; 2 Thomp. Neg. 1083, 1098; *Hobbs v. Lond. & S. W. R. R.* L. R. 10 Q. B. 111: 13 Am. L. Reg. 15; *McClary v. Sioux &c. R. R.* 3 Neb. 44; *Pullman Car Co. v. Barker* 34 Am. R. 89; *Rigby v. Hewitt* 5 Exch. 240; *Fairbanks v. Kerr* 70 Penn. St. 86; *McGrew v. Stone* 53 Penn. St. 436; *Scott v. Hunter* 46 Penn. St. 192; *Atchison &c. R. R. Co. v. Stanford* 12 Kan. 354; *Proctor v. Jennings* 6 Nev. 83; *Doggett v. Richmond &c. R. R. Co.* 78 N. C. 305; *Phillips v. Dickerson* 85 Ill. 11; *Hoag v. L. S. & M. S. R. R. Co.* 85 Penn. St. 293; *Lancaster v. Kessinger* 12 Rep. 636; *Wood v. L. S. & M. S. R. R. Co.* 49 Mich. 370.

COOLEY, C. J.   Action to recover damages for a personal injury.   The facts as they appeared on the trial were as follows:

The plaintiff resides in the township of Huron, a few miles east of Belden station on the road of defendant.   He was at Wayne station on the evening of January 12, 1883, awaiting the train which was to go south past Belden in the night. The train left Wayne at 3:05 in the morning of the 13th, and

he procured his ticket and took passage for Belden, where the train was due at 3:30. •The night was dark, cold and wet. The train stopped when " Belden " was called, and plaintiff got off. Belden was only a flag station for this train, and there was no one in charge of the station-house, and no light there. When plaintiff got off the train he was told by the brakeman or conductor that they had run by the station about two car lengths, and he replied that if that was all, it was no matter, as he had to go that way. An east and west highway crosses the railroad about twenty-four rods south of the station-house, which the plaintiff would take in going to his home. If he was two car lengths beyond the station-house, he would still be north of the highway; and supposing that to be the case, he followed the track along south, in preference to going back to the station-house from which a passage east of the track would have led him to the highway. The plaintiff knew the place well, and knew that on the track he must cross an open cattle-guard to reach the highway. He had crossed this before, and sometimes found a plank laid over it. Passing on he soon came to trees which he knew were some distance south of the highway, and he then knew the information given him as to where he was when he alighted from the train was erroneous. He turned about to retrace his steps, and followed the track in the direction of the highway. This he did carefully, because it was very dark, and he knew there was an open cattle-guard on the south side of the highway, as well as on the north side. He was looking for this cattle-guard constantly and carefully. There were burning kilns near to the track on his right, and the smoke from these affected his eyes, but he saw a switch light, which he knew was near the crossing, but which at the time was too dim to aid him. He continued to approach the cattle-guard carefully, intending, if there was a timber or plank over it, to cross upon that; and if not, then to pass down into it and climb out. In the dim light he saw what he believed to be the cattle-guard, which seemed to be several paces off, but at the very next step one foot slipped, and as he attempted to save himself by springing upon the other, the other foot caught, and

he was precipitated into the cattle-guard, and received an
injury of a very serious and permanent nature.   He was for
a time senseless, but then succeeded in drawing himself out
by his elbows,—not being able to use his lower limbs,—and
with great difficulty he reached a neighboring tavern, where
he was cared for.

On the trial a claim was made on the part of the defense
that the plaintiff was negligent in following the railroad
track back to the cattle-guard and in attempting to cross
it, when he might have left the track to the right and
passed along the field until he came to the highway; and
evidence was given to show that he would have encountered
no impediments.   But, in such a night as this was, it is not
clear that the field would have afforded a safer passage than
the highway; and his failure to take it would at most only
raise a question of negligence on his part which would neces-
sarily go to the jury.   *Detroit &c. R. Co. v. Van Steinburg* 17
Mich. 118; *Billings v. Breinig* 45 Mich. 72; *Chicago &c.
R. R. Co. v. Miller* 46 Mich. 537; *Marcott v. Marquette
&c. R. R. Co.* 47 Mich. 7.   In this case the court took the
case from the jury, and directed a verdict for the defendant.

This direction is understood to have been given on the
ground that the injury which the plaintiff suffered was not
proximate to the wrong attributable to the defendant, and
for that reason would not support an action.

The wrong of the defendant consisted in carrying the
plaintiff past the station, and then giving him erroneous
information as to where he was.   If the injury suffered was
not a proximate consequence of this wrong, the instruction
of the court was right; otherwise not.   The difficulty here
is in determining what is and what is not a proximate con-
sequence in contemplation of law.

For the plaintiff, the cases are cited in which it has been
held that one whose negligence causes a fire by the spreading
of which the property of another is destroyed, is liable for
the damages, though the property for which compensation
was claimed was only reached by the fire after it had passed
through intervening fields or buildings.   *Kellogg v. C. & N.*

*W. R. Co.* 26 Wis. 223 ; *Fent v. Toledo &c. R. Co.* 59 Ill. 349 ; *Wiley v. West Jersey R. Co.* 44 N. J. Law 248; *Milwaukee &c. R. Co. v. Kellogg* 94 U. S. 469. But these cases, we think, are not analogous to the one before us. The negligent fire was the direct and sole cause of the injury in each instance, and there was no intervening cause whatever. The cases are in harmony with *Hoyt v. Jeffers* 30 Mich. 181. The case of *Pennsylvania Co. v. Hoagland* 78 Ind. 203 seems, at first view, to be more in point. The action in that case was brought by a woman, who, in consequence of misinformation on the part of the person in charge of a railroad train, left the car in the night-time at the wrong stopping place, and wandered about for an hour or more before she could find shelter, taking cold from exposure. But here, as in the other cases cited, there was no cause intervening the wrong complained of and the resulting injury, and the question of proximate cause does not appear to have been raised in the case. *Smith v. Steam Packet Co.* 86 N. Y. 408 is also relied upon, but it is unlike this in the important particular that the intervening cause, which, after the first wrong on the part of the defendant, operated to bring injury to the plaintiff, was a neglect of proper care, which the court held was due from the defendant to the plaintiff under the circumstances, so that all the injury received was a proximate result of the defendant's neglects of duty.

The case of *Brown and Wife v. Chicago, Mil. & St. Paul Ry. Co.* 54 Wis. 342: 3 A. & E. R. R. Cas. 444, more nearly resembles the present case than any other to which our attention has been called by counsel for the plaintiff. The facts, as stated in the prevailing opinion, are the following: The plaintiffs, with their child, seven years old, were being carried on defendant's cars, with Mauston for their destination, and when they arrived at a station three miles east of Mauston they left the train, under the direction of the brakeman, who told them they were at Mauston. It was in the night; it was cloudy and wet; there was a freight train standing on a side track, where they were put off the train; there was no platform, and no lights visible, except on the freight train.

Plaintiffs soon ascertained they were not at Mauston, but did not know where they were. They did not see the station-house, though there was one, hidden from their view by the freight train. They supposed they were at a place two miles east, where the train sometimes stopped, but where there was no station-house. They started west on the track towards Mauston, expecting to find a house where they might stop, but did not find one until they came to a bridge, within a mile of Mauston, and then they thought it easier to go on to that place than to seek shelter at the house, which was a considerable distance from the track. Mrs. Brown was pregnant at the time, and when she arrived at Mauston was quite exhausted. She had, during the night, severe pains, which continued from time to time, and were followed by flowing, and at length by a miscarriage, inflammation and serious illness. The plaintiffs claimed that the miscarriage and subsequent sickness were all caused by the walk Mrs. Brown was compelled to take to get from the place where they were left by the train, to Mauston, and the question in the case was whether the defendant was liable for the injury to Mrs. Brown, admitting it to have been caused by her walk. The majority of the court, finding that " there was no intervening independent cause of the injury other than the act of the defendant," and that " all the acts done by the plaintiffs, and from which the injury flowed, were rightful on their part, and compelled by the act of the defendant," held that " the injury to Mrs. Brown was the direct result of the defendant's negligence, and that such negligence was the proximate, and not the remote, cause of the injury," quoting Lord Ellenborough in *Jones v. Boyce* 1 Stark. 493, that, " if I place a man in such a situation that he must adopt a perilous alternative, I am responsible for the consequences."

The case of *Pullman Palace Car Co. v. Barker* 4 Col. 344: s. c. 34 Am. Rep. 89, is opposed to the case in Wisconsin, as are also *Hobbs v. London & S. W. R. Co.* L. R. 10 Q. B. 111, and *Francis v. St. Louis Transfer Co.* 5 Mo. App. 7. But it is not necessary to express any opinion upon the conflict which these cases disclose, because in the case before

us there was an independent cause intervening the fault of the defendant and the injury the plaintiff sustained, and from which the injury resulted as a direct and immediate consequence.

To show what is understood by intervening cause, it may be useful to refer to a few cases. *Livie v. Janson* 12 East 648, was a case of insurance on a ship warranted free of American condemnation. In sailing out of New York she was damaged by perils of the sea, stranded and wrecked on Governor's Island, and then seized and condemned. It was the peril of the sea that caused the vessel to be seized and condemned; but as the condemnation was the proximate cause of the loss, the insurers were held not liable. A similar case is *Delano v. Ins. Co.* 10 Mass. 354, where a like result was reached.

In *Tisdale v. Norton* 8 Met. 388, the facts were that a highway was defective, and the plaintiff, who was using it, went out of it into the adjoining field, where he sustained an injury. He brought suit against the town, whose duty it was to keep the highway in repair. But the court held that only as a remote cause could the injury of the plaintiff be said to be due to the defect in the highway. The proximate, not the remote, cause is that which is referred to in the statute which gives an action against the town; and the proximate cause in this case was outside the highway; not within it.

In *Anthony v. Slaid* 11 Met. 290, the plaintiff, who was contractor with a town to support for a specified time and for a fixed sum all the town paupers in sickness and in health, brought suit against one who, it was alleged, had assaulted and beaten one of the paupers, as a consequence of which the plaintiff was put to increased expense for care and support; but the action was held not maintainable.

In *Silver v. Frazier* 3 Allen 382, it was decided that a principal whose agent has disobeyed his instructions, induced to do so by the false representations of a third party, cannot maintain an action against such third party for the damage sustained. Said Bigelow, C. J.: " The alleged loss or injury suffered by the plaintiff is not the direct and immediate

result of the defendant's wrongful act. Stripped of its technical language, the declaration charges only that the agent employed by the plaintiff to do a certain piece of work disobeyed the orders of his principal, and was induced to do so by the false statements of the defendant. In other words, the plaintiff alleges that his agent violated his duty and thereby did him an injury, and seeks to recover damages therefor by an action against a third person, on the ground that he induced the agent by false statements to go contrary to the orders of his principal. Such an action is, we believe, without precedent. The immediate cause of injury and loss to the plaintiff is the breach of duty of his agent. This is the proximate cause of damage. The motives or inducements which operated to cause the agent to do an unauthorized act are too remote to furnish a good ground of action to the plaintiff."

In *Dubuque Wood & Coal Ass'n v. Dubuque* 30 Iowa 176, the facts were that the plaintiff had a quantity of wood deposited at one end of a bridge, which was to be taken over the bridge into the city of Dubuque. The bridge was out of repair, and while awaiting repair by the city, whose duty it was, the wood was carried away by a flood. The plaintiff sued the city for the value of his wood; but it was held he could not recover. Beck, J., in deciding the case, illustrates the principle as follows: "An owner of lumber deposited upon the levee of the city of Dubuque, exposed to the floods of the river, starts with his team to remove it. A bridge built by the city which he attempts to cross, from defects therein falls, and his horses are killed. By the breaking of the bridge and the loss of his team, he is delayed in removing his property. On account of this delay his lumber is carried away by the flood and lost. The proximate consequence of the negligence of the city is the loss of his horses. The secondary consequence, resulting from the first consequence, is the delay in removing the lumber, which, finally, caused its loss. Damage on account of the first is recoverable, but for the second, is denied."

Similar to this are *Daniels v. Ballantine* 23 Ohio St. 532:

s. c. 13 Am. Rep. 264; and *McClary v. Sioux City &c. R. R. Co.* 3 Neb. 44: s. c. 19 Am. Rep. 631. In each of these cases the negligence of the defendant left the property of the plaintiff where, by an act of God,—in one case a flood, and in the other a tornado,—it was lost or injured, and in each the act of God, and not the negligence, was held to be the proximate cause of injury.

In *Scheffer v. Railroad Co.* 105 U. S. 249, it appeared that, by a collision of railroad trains, a passenger was injured, and becoming thereby disordered in mind and body, he, some eight months thereafter, committed suicide. Action was brought against the railroad company as the negligent cause of his death. Miller, J., speaking for the court, and referring to *Insurance Co. v. Tweed* 7 Wall. 44, and *Milwaukee &c. R. R. Co. v. Kellogg* 94 U. S. 469, said: "The proximate cause of the death of Scheffer was his own act of self-destruction. It was within the rule in both these cases a new cause, and a sufficient cause of death. The argument is not sound which seeks to trace this immediate cause of the death through the previous stages of mental aberration, physical suffering, and eight months disease and medical treatment to the original accident on the railroad."

In *Bosch v. Burlington &c. R. R. Co.* 44 Iowa 402, the plaintiff's house took fire, and the fire department, because, as was alleged, of the wrongful occupation and expansion of the river bank, were unable to get to the river to obtain water for putting out the fire. Plaintiff sued the defendant for the loss of his property, but the court said the acts of defendant complained of "have no connection with the fire, nor with the hose or other apparatus of the fire companies. They are independent acts, and their influence in the destruction of plaintiff's property is too remote to be made the basis of recovery."

In this last case *Metallic Compression Co. v. Railroad Co.* 109 Mass. 277: s. c. 12 Am. Rep. 689, was referred to and distinguished. The facts there were that the plaintiff's building was on fire, and water was being thrown upon it through hose, when an engine of the defendant was recklessly run upon the

hose and severed it, thereby defeating the efforts to extinguish the fire, which otherwise were likely to succeed. In that case the relation of the plaintiff's injury to the defendant's act was direct and immediate. So it was also in *Billman v. Indianapolis &c. R. R. Co.* 76 Ind. 166; *Lane v. Atlantic Works* 111 Mass. 136; and *Ricker v. Freeman* 50 N. H. 420,—all of which are ruled by the *Squib Case* (*Scott v. Shepherd* 2 W. Bl. 892); and so, perhaps, are *Fairbanks v. Kerr* 70 Penn. St. 90: s. c. 10 Am. Rep. 664; and *Lake v. Milliken* 62 Me. 240: s. c. 16 Am. Rep. 456.

In *Henry v. St. Louis &c. R. R. Co.* 76 Mo. 288: s. c. 43 Am. Rep. 762, it appeared that the plaintiff was wrongfully commanded to get off a caboose of the defendant, where he had a right to be. He obeyed the command, and while upon the ground, stepped upon a track, where he was run upon and injured by a train. Hough, J., speaking for the court, said: "It is perhaps probable that if the plaintiff had not been ordered out of the caboose, he would not have been injured, but this hypothesis does not establish the legal relation of cause and effect between the expulsion and the injury. If the plaintiff had not left home he certainly would not have been injured as he was, but his leaving home could not, therefore, be declared to be the cause of his injury. As the plaintiff's injury was neither the ordinary, natural nor probable consequence of his expulsion from the caboose, such expulsion, however it might excite our indignation, in the absence of any regulation of the defendant to justify it, cannot be considered in this action, and the legal aspect of the case is precisely the same that it would have been if no such expulsion had taken place. It is to be regarded as if the plaintiff had gone to the caboose and could not get in because it was locked, or being able to get in, chose to remain outside."

Further reference to authorities is needless. The application of the rule that the proximate, not the remote cause is to be regarded, is obscure and difficult in many cases, but not in this. By the wrong of the defendant the plaintiff was carried past the station where he had a right to be left,

and beyond where he had a right, from the information received from defendant's servants, to suppose he was when he left the car.    For any injury or inconvenience naturally resulting from the wrong, and traceable to it as the proximate cause, the defendant may be held responsible.    But before any injury had been sustained, the plaintiff discovered where he was, and started back for the road which he had intended to take.    Whatever danger there was to be encountered in the way was to be found in the cattle-guard, and this he understood and calculated upon.    Evidently it did not appear to him of a formidable nature; for, on the supposition that he was north of the highway when he left the train, he had voluntarily started south with the expectation of crossing the cattle-guard on that side, over which he might or might not find a plank laid, when by stepping back a few rods, where he supposed the station-house to be, he might pass from thence out to the highway by the passage-way for persons and vehicles leading from the station-house to it, and thereby avoid the cattle-guard altogether.    It is very clear that he did not anticipate danger.    Neither, probably, would any other person have anticipated it.    The crossing was a simple matter; it was only to ascertain first whether a plank or timber was laid across, and if so, to cross upon it, and if not, to step down into the excavation, and out on the other side.    Where was he to look for danger?    The night was dark, it is true; but even by the sense of feeling, when he knew he was within a few feet of the cattle-guard, one would expect him to be able to determine its exact location.    But then something happened which it is evident that the plaintiff, with full knowledge of all the facts, did not at all expect and had not feared.    Misled apparently by visual deception, he moved forward under a supposition that the cattle-guard, upon the brink of which he already stood, was some paces off, and this deception, with the slipping of his foot, concurred to produce the injury.

What was this but pure accident?    It was an event which happened unexpectedly and without fault.    The defendant or its agents had not produced the deception or caused the

foot to slip; and such wrong as the defendant had been guilty of was in no manner connected with or related to the injury except as it was the occasion for bringing the plaintiff where the accident occurred. It was after the plaintiff had been brought there that the cause of injury unexpectedly arose. If lightning had chanced to strike the plaintiff at that place, the fault of the defendant and its relation to the injury would have been the same as now, and the injury could have been charged to the defendant with precisely the same reason as now. If the accidental discharge of a gun in the hands of some third person had wounded the plaintiff as he approached the cattle-guard, the connection of defendant's wrong with the injury would have been precisely the same which appears here. But the proximate cause of injury in the one case would have been the act of God; in the other, inevitable accident; but not more plainly accident than was the proximate cause here. Back of that cause in this case were many others, all conducing to bring the plaintiff to the place of the danger and the injury; the act of the defendant was the last of a long sequence; but as between the causes which precede the proximate cause, the law cannot select one rather than any other as that to which the final consequence shall be attributed, and it stops at the proximate cause, because to go back of it would be to enter upon an investigation which would be both endless and useless.

The injury being the result of pure accident, the party upon whom it has chanced to fall is necessarily left to bear it. No compensation can be given by law in such cases. *Weaver v. Ward* Hob. 134; *Gibbons v. Pepper* 1 Ld. Raym. 38; *Losee v. Buchanan* 51 N. Y. 476: s. c. 10 Am. Rep. 623; *Vincent v. Stinehour* 7 Vt. 62: s. c. 29 Am. Dec. 145; *Morris v. Platt* 32 Conn. 75; *Brown v. Collins* 53 N. H. 442: s. c. 16 Am. Rep. 372; *Bizzell v. Booker* 16 Ark. 308; *Marshall v. Welwood* 38 N. J. Law 339: s. c. 20 Am. Rep. 394; *Paxton v. Boyer* 67 Ill. 132: s. c. 16 Am. Rep. 615; *American Express Co. v. Smith* 33 Ohio St. 511: s. c. 31 Am. Rep. 561; *Plummer v. State* 4 Tex. App. 310: s. c. 30 Am. Rep. 165; *Parrot v. Wells* 15

Wall. 524; *Holmes v. Mather* L. R. 10 Exch. 261. A case like this appeals strongly to the sympathies, but sympathy cannot rule the decision.

Upon the undisputed facts of the case the plaintiff has no right of action for the injury which has befallen him, and the circuit court was correct in so holding. The question what judgment shall be rendered in the case is for the present reserved.

The other Justices concurred.