EMILY LEWLESS v. THE DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY COMPANY.

*Negligence—Obstruction of highway by railroad company—Submission to jury—Settlement of claim—Rescission for fraud— Duty of defrauded party—Charge to jury.*

1. Where in a suit against a railway company to recover for personal injuries sustained, as alleged, by defendant leaving a car standing so as to encroach upon a highway crossing, the testimony tended to show that the planked portion of such crossing was encroached upon by the draw-bar of one of said cars,—

   *Held,* that it was for the jury to say whether or not it was a negligent obstruction of passage (*Peterson v. Chicago & W. M. Ry. Co.,* 64 Mich. 621), and error for the court to decide such question.

2. Where parties have agreed in writing to a settlement of an existing lawsuit, such arrangement must stand until set aside for such fraud as should vitiate it, upon a rescission attempted as soon as practicable after the fraud is known, and with no lack of diligence in discovering it. What will constitute fraud depends considerably on circumstances; but all deceit or false assertion is not fraud. Parties are always held to some diligence in protecting their own interests, and when once put upon their guard are bound to be diligent in prosecuting their inquiries.

3. Where *such* a settlement is sought to be avoided for fraud, it is the duty of the court to explain to the jury what they can consider in determining the question of fraud, and what would constitute such fraud as would authorize a rescission, and also to

explain what diligence is required of the defrauded party in making *investigation* when doubts were created, and in *action* when fraud was believed to exist; and the party alleging such fraud must prove explicitly on the trial the falsehood of the facts relied on, and satisfy the jury that he had reason for such reliance.

4. Where after the commencement of a suit a written agreement for a settlement of plaintiff's claim was signed by the parties, which plaintiff sought to avoid for fraud practiced on her in securing it, and on the trial the defendant claimed that the paper was only the completion of arrangements already made, and in which, if made, there was no pretense of fraud,—

*Held*, error for the court in its charge to direct the mind of the jury entirely to what took place on the occasion of the signing of the paper.

5. While in *such* a case actual statements of fact made by the attorney for the defendant may be expected to be made truly, and, if false, will be ground of complaint, yet, in construing such statements and reasons urged by such counsel for a settlement, the plaintiff has no right to overlook his hostile position, or to expect advice from him.

6. A party defrauded is bound to use *active* diligence, and to use no *unavoidable* delay in complaining, and any delay which is not *reasonably* necessary, under all the circumstances, is a fatal delay.

Error to Oakland. (Stickney, J.) Argued January 18 and 19, 1887. Decided April 14, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*E. W. Meddaugh* and *George Jerome,* for appellant.

*W. N. Draper* (*Thomas J. Davis,* of counsel), for plaintiff.

CAMPBELL, C. J. Plaintiff sued and recovered for personal injuries. On March 23, 1883, she and her husband were going along a highway [in Royal Oak, and, where it crossed defendant's railway, their horse shied, and their sleigh ran against a draw-bar that stood out from a car left by the crossing, and the sleigh was upset and plaintiff hurt. Suit was brought in the fall of 1883, and noticed for hearing

for the February term, 1884. A few days before it was reached a settlement was made, and $1,000 was received by plaintiff, and receipted for in full satisfaction. Seventy-five dollars was further paid for the doctor's bill for attendance on plaintiff. When the suit was called, the week after settlement, it was announced to the court, counsel for both parties being present, that it was settled. No objection was made against this settlement until some time in the early part of 1886, when plaintiff's counsel tendered back the money, and noticed the case for trial. The court left the case to the jury on the facts of the accident, and on the legal validity of the settlement, and the jury rendered a verdict for $1,753.49, in addition to the sums already paid, which together made up just $3,000.

There was a conflict of testimony on all the serious questions in the case, and, upon the circumstances of the settlement, there was a direct and positive denial of the facts relied on to set it aside. The questions presented are law questions, depending on the instructions to the jury in the final charge and refusals to charge.

The planking of the highway crossing was 14 feet wide. One car stood on each side of the crossing, so as to leave a space between them of about 22 feet. One car was seven or eight feet away from the planking. The other was not on the planking, but was claimed by plaintiff to have been so near it that the draw-bar hung over it between twelve and eighteen inches, and two or three feet from the wagon track, in the middle of the planking. It was on a moonlight night, and the horse, shying to the right, brought the dashboard against the draw-bar, which led to the accident.

In this case the question whether the negligence of plaintiff or her husband contributed to the injury was properly left to the jury; and a request to charge that plaintiff made out no case, on the undisputed facts in respect to the cause of the injury complained of, which would entitle her to recover, was

also too broad. If, as the testimony tended to show, that part of the highway which was planked for purposes of crossing was encroached upon by the draw-bar of the car standing beside it, it was for the jury to say whether or not it was a negligent obstruction of passage. *Peterson v. Chicago & W. M. Ry. Co.*, 64 Mich. 621; *Young v. Detroit, G. H. & M. Ry. Co.*, 56 Id. 435.

A planking fourteen feet wide would leave seven feet each side of the center, and it cannot be held that persons may not properly drive over any part of it, as would be necessary if two teams were to pass each other. Such a projection would be as much in the way as any other projection over the plank, and might not be as readily seen in the evening. Had it not been for collision with the draw-bar, no accident would probably have happened. The question was a legitimate question of fact.

But the court below undertook to decide this question of negligence, and did not leave it to the jury. The judge said: "The undisputed evidence in this case shows that the defendant was guilty of negligence in leaving its cars standing within the limits of the highway for the length of time as testified to;" and then proceeded to say that plaintiff should recover, unless contributing to the injury; and this, as appears from the earlier part of the charge, was based by the court, not on any encroachment on the planking, but upon the fact that the two cars were only 22 feet and some inches apart, making no reference to the planking, or any obstruction or encroachment on it. The planking was 14 feet wide, and, so far as appears, was the only part of the highway used or practicable for crossing. There was a conflict of testimony as to whether there was any real obstruction, and also whether the car in question, or its draw-bar, interfered with or encroached on the planking. The cases before cited hold that these were questions for the jury, and it was error to hold otherwise.

The chief contention arose out of the settlement. Upon this, if defendant's witnesses were followed, the fairness and sufficiency were beyond dispute. It appears from all the testimony on both sides that the paper was filled out and the money brought and ready at the time of execution. Defendant's testimony shows it was all agreed on beforehand, and the amount fixed by acceptance of plaintiff's husband's offer, who she says had plenary power to act for her. The testimony on both sides also shows that there was no bargaining, or attempt at bargaining, concerning any particular amount on either side at the time of settlement, and that a thousand dollars was the only sum mentioned by anybody. Defendant's witnesses further deny all the charges made by plaintiff concerning representations and urgency in procuring the settlement.

Her testimony tended to show that she represented that her attorney, Mr. Draper, was interested in the claim, and should be consulted, and that defendant's attorney and the doctor represented that there was no occasion for it; also that it was represented that, if the case was tried, it would be delayed for a long time on appeal, and that Draper was a scoundrel, and the attorneys would absorb all that was recovered, and she would get nothing; that she had no cause of action, and what was given was a present.

The representations which she says determined her were the long delay and the aspersions on Mr. Draper. She does not claim that she doubted her cause of action, and does not testify that Dr. Lathrop gave any such indication, or that she thought she had none.

The questions considered by the court were concerning the original validity of this settlement, and the promptness of rescission. Complaint is made that the charge was not properly guarded on either of these matters, and that the jury were allowed, if not directed, to find both fraud and timely rescission, without proper caution or direction on either subject. The charge was as follows:

"It is claimed that on the ninth day of February, 1884,— and that was after the commencement of this suit, as I understand, after the case had been assigned for a particular day for trial,—free and open settlement was had between the parties, and the sum then and there agreed upon was duly paid, and the defendant released from any further liability. That is the claim of the defendant company. If the jury find, in this connection, that the parties have settled up the matter of the injury, and paid the same, and they further find that the settlement so made is free from any fraud or misrepresentation or deceit, then it would bind the plaintiff, and be a bar to her right to recover in this action.

" A person having a claim against another for damages, or any claim arising from contract relations, or from personal injury, may settle the same, and, when settled, unless fraud intervenes, it is binding on all concerned, the same as any other contract or agreement or understanding, and should be so considered and held. But where a party is imposed upon by fraud or misrepresentation, and is made to do things that he would not do except for the fraudulent misrepresentation, then, if he so elects, he need not be bound by the agreement or by the release. In this case it is for the jury to say, from all the facts and circumstances in the case, whether the plaintiff in this settlement has been imposed upon and defrauded or not. If she has not, then in the law she is bound by her agreement, and your verdict should be for the defendant. If she was defrauded, then, if the jury find that she immediately took steps to rescind the agreement as soon as the fraud was discovered, she would not be bound by it.

" The claim of the plaintiff is that the receipt, as shown in evidence, was obtained in this case by misrepresentation and fraud on the part of the defendant company's agent; that the statements made by the defendant's agent and attorney at the time of settlement—that the company was not liable; that, if a judgment was obtained, the company would appeal, and keep plaintiff out of it for three or four years, and that, if paid, the attorney would take it all, and the plaintiff would lose the benefit of any amount that might be paid; and, further, that plaintiff's attorney was a damned scoundrel, and sundry other representations that the jury will remember, all of which were not true—influenced and induced the plaintiff to agree to the proposed settlement; further, that the attorney for the company asked that plaintiff would keep still, keep the settlement of the matter a secret, and say nothing about the matter ; and plaintiff

claims that, notwithstanding the representations made, she saw her attorney in a day or two, and nothing was said to him about the settlement of the case till about the first of January, 1886, almost two years, and because of the request made by defendant's agent. The above are the representations that it is claimed were made to the plaintiff that induced her to sign this release or receipt, and to accept the one thousand dollars.

"Now, if the jury should find that there was a material misrepresentation of facts made by the agent of the defendant company, with reference to this matter, and the plaintiff relied upon that, and she was induced to take the money and sign the release, relying entirely upon what was said by defendant's agent, and was imposed upon by the representations; and if the jury further find that, after the discovery of the misrepresentations and fraudulent practices upon his part, she took steps immediately to rescind the matter, and pay back the money that she had received,—then she would place herself in a position where she could contest this matter; and, if the jury find that she was imposed upon, then the receipt would not bind her, provided the representations were false.

"If you find that there was an injury received, and that the company was negligent in placing the cars in the position complained of, and in consequence of that negligence she received an injury, and such an injury that she is entitled to compensation at your hands under the law as given you, and you find that this receipt was obtained from her by fraudulent means, and immediately after the discovery of the fraud she took steps to place the company in the same position that they were in before the attempted settlement, she would have a right under the law to do so, and insist at your hands that the case had not been disposed of by settlement, and ask at your hands a verdict."

The court then proceeded to refer briefly to the negligence of the defendant as before cited, and to the right to recover unless there had been contributory negligence, and continued as follows,—a repetition, with some changes, of what had been charged before,— in these words:

"The plaintiff is not bound by the release offered in evidence, if it was obtained from her by fraud or misrepresentations of facts, if, upon discovering it was so obtained, she, within a reasonable time thereafter, caused to be tendered to

the general solicitor of the defendant company, Mr. Jerome, the money paid on obtaining the release, with interest, and demanding that the release be surrendered. If you find from the evidence that Mr. Jerome, on behalf of the defendant, and for the purpose of inducing the plaintiff to settle the suit and sign the release in question, represented to her that she had no valid claim against the company; that if she went on with the suit, and prevailed in the circuit court, the defendant would appeal to the Supreme Court, and prolong the litigation in that Court for two or three or four years, and eventually defeat her, or, if it did not, her attorney would absorb all the avails of the suit; that Mr. Draper, her attorney, was a damned scoundrel, and would keep all plaintiff ever recovered, if she did recover; that these representations were made in the presence of Dr. Lathrop, the plaintiff's family physician, and he at the same time was in the defendant's employ, and concealed this fact from the plaintiff, and urged her to settle and sign the release, and plaintiff was, by such representations and conduct, induced to sign the release,—she is not bound thereby, and it is no bar to her recovery, if you find that she caused the amount paid in so obtaining the release, with interest, to be tendered back to defendant, or its general solicitor, within a reasonable time after she discovered she had been deceived and misled."

In considering the case as now presented, the facts may be properly regarded chiefly on plaintiff's testimony. In disputed matters, the jury could regard it if they saw fit. But, upon the circumstances and testimony as presented for the plaintiff, these instructions were misleading, and not such as the jury should have received.

The testimony of plaintiff, as well as of her husband and Mr. Draper, shows that Mr. Lewless had been given full control over the case, its management and its settlement, and that plaintiff herself knew and did very little about it. Whatever knowledge or suggestion came to him came in law to her, and his dealings in the matter were her dealings. Mr. Lewless was at this time a deputy-sheriff of Oakland county, engaged in the usual services performed by such officers, and had an experience of some years. He was an officer of the circuit court of Oakland, with some necessary knowledge of

business and lawyers. The case cannot properly be made to turn on what Mrs. Lewless may or may not have known personally, if known to him, and the husband could not properly be left entirely out of sight, as he was throughout this entire charge. Some facts were also, of course by inadvertence, incorrectly stated.

Where parties have agreed to a settlement of an existing lawsuit, and put it in writing, and signed it, such arrangement must stand until set aside for such fraud as should vitiate it, upon a rescission attempted as soon as practicable after the fraud is known, and with no lack of diligence in discovering it. What will constitute fraud depends considerably on circumstances; but all deceit or false assertion is not fraud. Parties are always held to some diligence in protecting their own interests, and those dealing with them have a right to suppose they will be. And parties once put on their guard are bound to be diligent in prosecuting their inquiries. It was the duty of the court, in leaving the question of fraud to the jury, to explain to them what they could consider in determining it, and what would constitute such fraud as would authorize a rescission.

It was also the duty of the court to explain to the jury what diligence was required of a party defrauded in making investigation when doubts were created, and in action when fraud was believed to exist.

In this case the court left to the jury to consider, as fraudulent, all of the conversation of Jerome or Lathrop upon which an issue was made between the witnesses, leaving them to consider all that the judge enumerated, "and sundry other representations that the jury will remember," and also to assume that there was testimony to contradict them. Nothing whatever was said to guide the jury into forming a verdict only on such facts as were in law material, and an averment of which might be deemed sufficient to justify action upon them, as well as actual reliance on them, and resulting injury. And it was equally necessary for plaintiff to prove

explicitly the falsehood of the facts she relied on, and to satisfy the jury that she had reason to rely on them.

It is also to be borne in mind that the charge of the court directed the mind of the jury entirely to what took place on the occasion when the paper was signed, and made no reference to the very material claim of defendant that the paper was only the completion of arrangements already made, and in which, if made, there is no pretense of fraud. While it was for the jury to pass upon the facts, they should not have had their attention confined, as it was, to the events of that afternoon, as if they were all that need be attended to.

It is also to be remembered that, so far as Mr. Jerome was concerned, he was known to be counsel for the other side, and urging defendant's interests; and while actual statements of fact may be expected to be made truly, and, if false, will be ground of complaint, yet, in construing statements and reasons of opposing counsel, parties have no right to overlook his hostile position, or to expect him to advise them. *Mayhew v. Phœnix Ins. Co.*, 23 Mich. 105; *Taylor v. Boardman*, 24 Id. 287. This is the more important, because, in the principal part of the charge, no reference is made to any one but Mr. Jerome, while, in a subsequent part of the charge, reference is made to Dr. Lathrop on a distinct ground, as acting for defendant, and concealing his relations while urging a settlement.

But if the charge had been confined, under proper guard, to actual misrepresentations of fact, it might not be very important what relations existed. Reference may be made, therefore, to the grounds set forth to the jury, to see how far they answer the case made by plaintiff's testimony. These, as recited by the court, were—

1. That defendant was not liable.
2. That the case might be hung up three or four years.
3. That the attorney, if it were paid, would take it all.
4. That Draper was a scoundrel.

Each of these was allowed to be ground of a charge of fraud, as well as any other things not mentioned by the judge which he told the jury to consider.

Plaintiff does not, nor does her husband, claim that the representation of non-liability had any effect on the settlement, and it is not easy to see how it could be treated as a false representation of fact. Plaintiff and her husband were the only persons in existence who knew all the facts, and who knew what their own conduct had been. With this knowledge they had satisfied themselves to sue, and had a bargain with Mr. Draper to conduct the suit for some interest in the proceeds. It nowhere appears that Lathrop took or indorsed any such ground. And Mrs. Lewless said expressly that she would not have settled except for the representations as to delay, and as to Draper; so that she did not rely upon it. The statements alleged in regard to final loss were not that the attorney (who was Mr. Draper) would beat plaintiff out of it, but that the lawyers would do so. This was not a representation of fact at all, and it was a matter as open to one person's judgment as to another's. It was no ground for a charge of fraud. If it had been confined to Draper, it would be a mere amplification of the alleged charge against him, and might be fairly connected with it. But it was not stated or used in that limited form.

While somewhat vague, we think that the allegations of the possibility of delay in the Supreme Court, and of the fraudulent character of Draper, if made, would be material, and, if relied on as made, would be important; so that we cannot say there was nothing to go to the jury on those points, although contradicted altogether. But, as already suggested, the jury got no such instructions, explaining what must exist to make fraud, as would enable them to govern their deliberations, or as would enable us to know what state of facts they determined.

But this transaction took place nearly two years before it

was complained of. All the parties implicated were neighbors, and all the facts were ascertainable in an inquiry of a few hours, at furthest. Any lawyer in general practice would know the extent of legal delays on appeal, and it cannot be doubted that Mr. Draper's reputation was ascertainable at Pontiac, if not elsewhere in the county.

The court did not tell the jury that a failure to rescind would cut off plaintiff's rights; gave them no instructions as to the diligence required, or concerning what would be a waiver of the fraud if existing; and gave no instructions as to how they should determine reasonable time. They were left to determine all these things for themselves.

The decisions on fraud all hold in this State that a party defrauded is bound to use active diligence, and to use no unavoidable delay in complaining. *Disbrow v. Jones,* Harr. Ch. 102; *Wilbur v. Flood,* 16 Mich. 40; *Hubbardston Lumber Co. v. Bates,* 31 Id. 158. Any delay which is not reasonably necessary, under all the circumstances, is a fatal delay. That is not the idea found in this charge. The idea of active promptness is nowhere suggested. And it is nowhere suggested that anything short of full knowledge of the facts requires action at all, however much may exist to put on inquiry.

Further than this, the jury were told that plaintiff claimed that nothing was said to her attorney about the settlement of the case till about the first of January, 1886, because of the request of defendant's agent. This is the ground on which the reasonableness of time was referred to as resting on such little delay as occurred after January, 1886, which no one could regard as a serious thing.

But it appears clearly that Draper saw both Mr. and Mrs. Lewless before the case was reached, was referred by plaintiff to her husband, and learned that there was a settlement, although he did not learn from them its precise terms. But it appears by Mr. Draper's admission that, when the case was

called, it was announced in open court as settled. It further appears that when Lewless told him it was settled Draper took him to task for making. the settlement under the circumstances.

"I told him in all probability he had been wronged. I know nothing about it. I never talked with him about this case from that day .until last January. He sent me this. money by the hand of the county clerk, Mr. Fay. I think it was within perhaps a month after the settlement. · He sent me $100, with no explanation that I can remember. I made a further investigation of the settlement. I think I asked Mr. Fay how it was settled. He told me he did not know. I think the next time I took any steps in regard to it I sent. for Mr. Lewless to come here in January last. I had a long talk with him about it. He finally told me how the settlement was obtained. I had a personal pecuniary interest in. this suit,—in the judgment. I entered into a contract with these people."

The contract was not produced, and it does not appear· what was the extent of the interest.

Instead of the settlement being concealed, it was made· known to Mr. Draper at once, and it was announced in open court as soon as the case was called on that the case was set-· tled, and it was left untouched for very nearly two years. According to Mr. Draper's testimony, which varies somewhat from that of Mr. Lewless, it was Mr. Draper, and not plaintiff or her husband, that finally stirred up objection to· the settlement, and Mr. Draper furnished the means to make the tender.

The statement of plaintiff's claim in the charge, which is not supported in this important particular, was directly mis-· leading in the matter of diligence. If Mr. Draper had been kept in ignorance of any settlement in obedience to requests of defendant's agents during all this period, and plaintiff and her husband had concealed its existence, the delay in informing themselves would appear in a different light. But when the fact of a settlement was made public at once, and brought to the attention of the court to prevent a trial, plaintiff had;

and actually received the benefit of counsel's action, so far as she chose to have it; and being notified of his dissatisfaction, and that he thought the settlement was improper, it became her duty at once to make such inquiry as would in her own mind determine it. And in this her husband represented her. Upon the decisive points of the reputation of Mr. Draper, and the course of business in the Supreme Court, the means of inquiry were close at hand. Mr. Lewless does not testify when he first inquired or what he learned on either subject. There is no adequate explanation, and no explanation at all concerning the long delay between the settlement and January, 1886. Draper's complaint and warning was that of counsel as well as of a party interested, and not the act of a stranger, and it was Lewless' duty, upon receiving Draper's suggestions, if not before, to satisfy himself on these matters, which could be done in a few hours at the county-seat, where both must have been known. He does not directly say whether he did or did not inquire, and upon this the burden was on plaintiff to show all that was done or not done. There is what is almost an admission that Lewless had found out all he cared to, quite early. In speaking of seeing Jerome frequently for three or four months after the settlement, he says he did not state to him any objections to the settlement by himself or wife, and did not, previous to January, 1886, to any of defendant's officers, and does not say he had not ascertained the facts, but says: "I didn't feel it was my duty to do it."

The failure to charge the jury properly, as well as the erroneous misstatement of facts, and the leaving of the question of rescission entirely to the unassisted judgment of the jury as to reasonable time and the duty of promptness, made the charge, as given, misleading. Whether the delay is capable of any further explanation we need not now consider. As left by the testimony, it was not sufficiently accounted for.

65 MICH.—20.

The judgment must be reversed and a new trial granted.

SHERWOOD and CHAMPLIN, JJ., concurred.

MORSE, J. I concur in the result.