136   341'
141   '319
141   '320
f141 ²321

136   341
158   '555

## HINCHMAN *v.* PERE MARQUETTE RAILROAD CO.

1. RAILROADS—NEGLIGENCE—FRIGHTENING HORSE—QUESTION FOR JURY.

After defendant's engine had obstructed a highway for some time, it was moved a few feet to permit plaintiff to drive across. He attempted to do so, but, just as he reached the crossing, steam was emitted from the engine, his horse became frightened, and plaintiff was injured. The engineer testified that he did nothing to occasion the emission of the steam, and it appeared that there was an automatic safety valve, through which it might have been emitted; but there was testimony from which it might be inferred that, though the steam was emitted from such valve, its emission might have been prevented by appliances under the engineer's control, and that he could have foreseen such emission, and provided against the consequences by moving the engine farther away. *Held*, that the jury might infer negligence.

2. SAME—PROXIMATE CAUSE.

Plaintiff had controlled the horse for 10 minutes with the lines, waiting for the engine to move; but, as the steam was emitted, the horse reared, the right line unsnapped, plaintiff jumped and caught the bridle, and the horse spun around, throwing and injuring him. He testified that he would not have been injured had the line not come unsnapped. *Held*, that the jury might infer that the unsnapping of the line was due to defendant's negligence in frightening the horse, which was therefore the proximate cause of the injury.

3. SAME—CONCURRENT CAUSES.

But, even if defendant's negligence did not cause the line to unsnap, such negligence was at least a concurrent cause of the injury, rendering defendant liable, in the absence of negligence on the part of plaintiff.

4. SAME—OBSTRUCTING CROSSING.

2 Comp. Laws, § 6234, subd. 5, providing that a railroad company shall not obstruct a highway by cars for more than five minutes, does not prohibit an engine from standing for more than that time within the limits of a highway, if it does not obstruct the crossing.

5. SAME—LIABILITY FOR FRIGHTENING HORSE.

The fact that defendant's engine had obstructed a highway for more than five.minutes, in violation of the statute, before moving so as to permit plaintiff to drive across, has no bearing upon its liability for injuries from the frightening of plaintiff's horse by an emission of steam from the engine as. he attempted to exercise such right.

6. SAME.

A railroad company is not liable for injuries from the frightening of a horse by an emission of steam from its engine merely because the engine was, and for more than five minutes had been, obstructing a crossing; the injuries not being the prox-- imate result of its unlawful act.

7. SAME—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

An instruction, in an action for injuries caused by an emission· of steam from a railroad engine as plaintiff was about to drive across the track, that it was for the jury to determine whether or not it was foolhardy to drive across at the time and in the manner he did, was erroneous, as authorizing the inference that, though he was guilty of contributory negligence, he could recover if his act was anything less than foolhardy..

8. SAME—TRIAL—ARGUMENT OF COUNSEL.

In an action against a railroad company for negligent injuries,. argument of plaintiff's counsel, based on the premise that a person in defendant's employ at the time of the accident, who was cognizant of the facts, and who had not testified, was still in its employ, was improper, the premise being unwarranted by anything in the testimony.

9. SAME.

Where, in an action for injury from the frightening of a horse by the emission of steam from an engine, the jury were not permitted to see the horse, argument of plaintiff's counsel, by which he undertook to convey to them the suggestion that an inspection of it would show that it was not vicious, was improper.

Error to Berrien; Coolidge, J. Submitted January 15, 1904. (Docket No. 58.) Decided April 19, 1904.

Case by Burwell Hinchman against the Pere Marquette Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Frederick W. Stevens* (*Victor M. Gore*, of counsel), for appellant.

*O'Hara & O'Hara*, for appellee.

CARPENTER, J. Plaintiff brings this suit to recover compensation for personal injuries. He recovered a verdict and judgment in the court below. His claim, as appears from his testimony, may be stated as follows: On the afternoon of September 24, 1900, he was traveling with his wife in a carriage on a highway which crossed defendant's road. When he reached this crossing, he found it obstructed by one of defendant's engines. He waited about 10 minutes, and then asked the engineer to move. The engineer replied, "We don't have to," but subsequently he moved the engine, not from the highway, but so that its nearest point (the tender) was "something over 10 feet" distant from the plank crossing. Plaintiff told the engineer that he was still in the road, but the engineer replied, with an oath, "Why don't you cross?" Plaintiff then attempted to cross, but, just as he got "to the edge of the planking," steam was emitted from the engine, the horse threw up his head and reared, "the right line unsnapped," and plaintiff jumped, and caught the bridle of his horse. The horse spun around and threw him, and he was injured. The evidence of the plaintiff did not indicate with any certainty just what caused the emission of steam, and defendant's engineer testified positively that he did no act to occasion its emission. It also appeared that there was an automatic safety valve, through which the steam which frightened plaintiff's horse might have been emitted.

It is the contention of the defendant that we are bound to assume that the emission of the steam was through the automatic safety valve, and numerous authorities are cited to the proposition that such emission is not negligence. There was testimony from which the jury might have inferred that, though the steam was emitted from the automatic safety valve, its emission could have been prevented

by appliances under control of defendant's engineer, and that defendant's engineer could have foreseen this emission, and have provided against the consequences by moving his engine farther from the crossing. From this evidence, we think that the jury might infer negligence.

It is contended that the proximate cause of plaintiff's injury was the fact that his line became unfastened, and not the negligent emission of the steam. It is not contended that the line became unfastened in consequence of plaintiff's negligence. The verdict of the jury negatives any such claim. But, as plaintiff testifies that he would not have been injured "if that line had not come unsnapped," it is contended that the unsnapping of the line is the sole proximate cause of his injury. Defendant's argument assumes that the unsnapping of the line was not a result of its negligence. If it was, then, on principle and authority, such unsnapping would not lessen its liability. *McKeller* v. *Township of Monitor*, 78 Mich., at page 488 (44 N. W. 412); *Putman* v. *Railroad Co.*, 47 Hun, 439. We are unable to agree with defendant in the proposition that we are bound to assume that this unsnapping did not result from its negligence. According to the testimony of the plaintiff, he had been able to control his horse for 10 minutes by the use of this line. When the steam was emitted, the horse threw his head up, and the line unsnapped. We are unable to see why a jury could not infer from this evidence that defendant's negligence, by frightening the horse, caused the line to unsnap.

But, assuming that neither plaintiff's negligence nor defendant's negligence caused the line to unsnap, we cannot agree with defendant that the unsnapping of the line thereby became the sole cause of plaintiff's injury, and consequently relieved defendant from all liability. Because the line unsnapped, plaintiff jumped from his buggy and seized his horse by its bridle; and the horse spun him around and threw him, not merely because the line was unsnapped, but because the horse was still frightened, as a result of defendant's negligence. We think we go quite

as far as we are warranted, in holding, under this hypothesis, that plaintiff's injury resulted from two causes, viz., the unsnapping of the line and defendant's negligence. We think it clear that, under such circumstances, defendant is responsible.

In *Phillips* v. *Railroad Co.*, 127 N. Y. 657 (27 N. E. 978), defendant's employés, in lowering a gate, hit a horse attached to a vehicle. The horse became frightened and ran away. The court said:

"It may be assumed that the plaintiff would have escaped injury if the rein had not broken.   *   *   *   The jury specifically found that the gate was then being lowered, and it did hit the horse; and it may be assumed that they also found that this rendered the horse unmanageable, and caused the situation from which resulted the calamity, although the immediate cause may have been the inability of the driver to control the course of the horse, occasioned by the breaking of the rein, thus causing or permitting him to make so short a turn as to upset the wagon and throw the plaintiff out of it. The facts so found may have been a proximate cause of the injury, and it may be that they produced a condition which required strong reins for protection against the injury which followed. This was not, therefore, necessarily attributable solely to the breaking of the rein, which may have been one of two proximate causes, and in that view, if the latter occurred without fault of the plaintiff, she would not be denied the right to recover."

In *Hunt* v. *Town of Pownal*, 9 Vt. 411, plaintiff, while traveling on a highway, was injured as a result of two joint causes, viz., the insufficiency of a nut or bolt on the carriage (not chargeable to plaintiff's negligence), and the neglect of defendant to keep its highway in suitable repair. The court, speaking through Mr. Justice Redfield, said (page 418):

"The loss, then, is the combined result of accident and of defendants' neglect to repair the road. We think, under such circumstances, the defendants are liable for the loss. It is no doubt true that, had the accident not occurred, no damage would have been sustained. And,

had the defendants performed their duty, the same result would have followed."

Defendant contends that this conclusion is opposed to numerous authorities. Among others, it cites three Michigan cases,—*Lewis* v. *Railway Co.*, 54 Mich. 55 (19 N. W. 744, 52 Am. Rep. 790), *Beall* v. *Township of Athens*, 81 Mich. 536 (45 N. W. 1014), and *Powers* v. *Lumber Co.*, 92 Mich. 533 (52 N. W. 937).

In *Lewis* v. *Railway Co.*, plaintiff, a passenger on the defendant's railway, was carried past his station on a dark night. On leaving the train he was misinformed by the conductor as to his whereabouts, but he soon discovered where he was, and started for his home. In crossing a cattle-guard, his eyes deceived him, his foot slipped, he fell, and was seriously injured. It was held that the defendant's negligence in carrying him past the station and in misinforming him as to his whereabouts was not the proximate cause of his injury. In that case the wrong of the defendant had only this to do with the plaintiff's injury: It led to his being in the position he was, where he was injured by another cause. In this case, however, the force which injured plaintiff resulted directly from defendant's wrong.

In *Beall* v. *Township of Athens*, plaintiff's horse became frightened at a log, not in, but alongside, the highway. He shied, plaintiff struck him with the whip, he sprang forward, and went down an embankment, upsetting the buggy and injuring plaintiff. To show the question involved and its disposition, we quote from the opinion:

"The important question in the case is whether the narrowness of the highway and the neglect to place railings or barriers along it primarily caused the accident. The township is only liable where the neglect complained of was the proximate cause of the injury. If such neglect was the secondary or remote cause, the township is not liable. The testimony shows conclusively, and without contradiction, that the primary cause of the accident arose from the horse taking fright at a log at the side of the

road, and the act of the driver in striking the horse a blow with his whip."

This reasoning—and in accordance therewith the case was decided—is not helpful to defendant, but is distinctly helpful to plaintiff, in the case at bar. It leads to the conclusion that the fright of the horse—the direct result in this case of defendant's wrong—was the primary cause of plaintiff's injury.

In *Powers* v. *Lumber Co.*, plaintiff's intestate, a brakeman on defendant's railroad, was riding on a train of logs loaded by himself. One of these logs came in contact with a tree standing close to the railroad. A piece fell from it, and killed him. He knew of this tree, and it was his duty so to load his train as to avoid the collision which occurred. It was held that the defective loading, for which he alone was responsible, was the proximate cause of the injury. No argument is necessary to show that this case is clearly distinguishable from the case at bar.

Defendant cites many decisions from other courts. Some of these (see *Daniels* v. *Ballantine*, 23 Ohio St. 532 [13 Am. Rep. 264]) are like the case of *Lewis* v. *Railway Co.*, *supra*, and therefore, as we have already shown, are clearly distinguishable. Others relate to the liability of one who negligently starts a fire, for the spreading of that fire. These cases have, at most, a remote bearing on the case at bar. If they have any, the liability of the wrong-doer, as settled in this State by *Hoyt* v. *Jeffers*, 30 Mich. 181, furnishes an argument which supports plaintiff's contention.

The only case cited by defendant's counsel which needs distinguishing from the case at bar, in our judgment, is the case of *Marble* v. *City of Worcester*, 4 Gray, 395. In that case, a horse being driven on the highway became frightened at a defect in the highway, broke loose from the vehicle, and, after running over 50 rods, injured plaintiff, who was traveling on the highway in the exercise of

due care. It was held, in a majority opinion written by Chief Justice Shaw, that this injury was not a proximate result of defendant's neglect to keep the highway in suitable condition; the court basing its decision upon "the remoteness and distance between the alleged defect in the highway and the place where the injury occurred," and "the entire want of connection of the plaintiff with the horse and sleigh and the accident which happened to them." For the purposes of this case, we are not called upon either to approve or disapprove this reasoning. It is sufficient to say that it clearly has no application to the case at bar. In deciding the case, however, the court laid down this rule, which is relied upon by defendant:

" The general rule of law, we understand, is that where two or more causes concur to produce an effect, and it cannot be determined which contributed most largely, or whether, without the concurrence of both, it would have happened at all, and a particular party is responsible only for the consequences of one of these causes, a recovery cannot be had, because it cannot be judicially determined that the damage would have been done without such concurrence, so that it cannot be attributed to that cause for which he is answerable."

This statement was no necessary part of the decision, and we do not think it supported by authority. Our own decisions holding the employer responsible for injuries to an employé resulting from the concurrent negligence of himself and a fellow-servant (see *Town* v. *Railroad Co.,* 84 Mich., at pages 221, 222 [47 N. W. 665]; *Hayes* v. *Frederick Stearns & Co.,* 130 Mich., at page 292 *et seq.* [89 N. W. 947] ) are opposed to this principle.

We forbear any discussion of defendant's contention that plaintiff was, as a matter of law, guilty of contributory negligence. We think its argument rests upon the assumption that the jury were bound to believe defendant's testimony, and to discredit the testimony of plaintiff himself. We cannot, as a matter of law, say that the jury could not credit plaintiff's testimony, no matter how many witnesses contradicted him.

In charging the jury, the court said:

"Now, if the engine had been standing in the highway for more than five minutes, and was then standing upon the highway at the time the plaintiff crossed, any emission of steam through the safety valve of this engine by the act or permission of the engineer would be an act of negligence; and, even if it were a fact that the engineer could not control or govern the amount of steam pressure upon the valve, or control the amount of steam generated, that would be no defense at law whatever. In other words, in that case the engine would be upon the highway unlawfully, and the engineer must take the consequences in case steam was emitted. The law would not recognize any defense, in such case, of the emission of steam by which the party crossing the track would be injured, unless the driver—the person crossing the track—was careless himself."

It is apparent from this language—and this is made more certain by other portions of the court's charge—that the jury were instructed that defendant was responsible for injuries resulting from any emission of steam, regardless of negligence, if the engine was on the highway more than five minutes. We think this was clearly error. In giving this charge the trial court must have assumed that the law of this State prohibited an engine standing upon the highway more than five minutes. This is a mistake. Subdivision 5, § 6234, 2 Comp. Laws, provides that the railroad shall not "obstruct any public highway or street by cars or trains for more than five minutes at any one time." The court could not, as a matter of law, say that, because the engine was within the limits of the highway, it obstructed the crossing. See *Lewless* v. *Railway Co.*, 65 Mich., at page 295 (32 N. W. 790). Plaintiff's counsel suggest that the charge is correct because, before the engine moved, it *had* obstructed the crossing for more than five minutes. This argument will not stand analysis. The responsibility of defendant for emitting the steam must depend upon the circumstances then existing, and not upon those which had formerly existed.

There is, however, a more serious vice in this charge. If defendant's engine, 11 feet from the crossing, constituted an unlawful obstruction, defendant would be responsible only for injuries resulting proximately from its unlawful act or from some other wrong done by it. See *Lewis* v. *Railway Co.*, 54 Mich. 55 (19 N. W. 744, 52 Am. Rep. 790). The charge violates this principle. It makes defendant responsible for injuries caused by the emission of steam, though that emission did not result from its negligence or have any relation to its wrongful obstruction of the crossing. It cannot be contended that *Young* v. *Railway Co.*, 56 Mich., at page 435 (23 N. W. 69), justified the charge. We there held:

"It was the duty of the railroad company not to obstruct the traveled portion of the highway at the crossing by placing cars thereon and permitting them to remain an unreasonable time. If it did not discharge this duty resting upon it in this respect, the defendant is liable to the plaintiff for damages arising from any injury which was the direct consequence of such negligence."

In charging the jury respecting the plaintiff's care, the court said:

"Now, gentlemen, you will scrutinize carefully this question with regard to the care of the plaintiff in driving across that track, and determine whether, on his part, it was a foolhardy act or not to drive that horse at the time and in the manner he did, and under the circumstances, across that track."

The jury would naturally infer from this language that, though plaintiff was negligent, and that negligence contributed to his injury, if his act was anything less than foolhardy he might recover. We need cite no authority to prove that this is wrong.

In his argument to the jury, plaintiff's counsel said:

"We have not heard the sound of the fireman's voice, but he is still living, and in the employ of the company in this State. * * * The fireman's testimony might possibly be of some benefit to somebody, gentlemen. If the

testimony of the fireman would have a tendency to be of benefit to this defendant, then the fireman is still in their employ.   He was there that day.   He saw what happened. If his testimony would be beneficial to the defendant, he would be here to testify, would he not?   Haven't we a right to infer that?"

There was no testimony that the fireman was still in the employ of the company, and the foregoing argument was therefore improper.

Plaintiff's counsel also stated, in his argument to the jury:

" We got the horse down here so all you could see it,— this vicious horse.   No; don't want to see it.   Why, you would laugh to see the horse that we had here some three days.   My brother, in his fairness, wants everything submitted to your consideration, my very fair brother indeed, but he didn't want you to see this horse."

It appears that the jury were not permitted to see the horse, and yet plaintiff's counsel, by this language, undertakes to convey to them the suggestion that an inspection of the horse would show that it was not vicious.   It is unnecessary to say that this was improper.

We refrain from noticing other complaints of this argument, in the belief that they relate to questions which will not again arise.

For the errors pointed out, the judgment must be reversed, and a new trial granted.

MOORE, C. J., MONTGOMERY and HOOKER, JJ., concurred.   GRANT, J., took no part in the decision.