THOMAS MYERS and wife v. RICHMOND & DANVILLE RAILROAD COMPANY.

*Negligence—Damages—Railways—Issues—Obstruction of Highway.*

1. In an action for damages against a railway company for personal injuries alleged to have resulted from defendant's negligence in placing

an obstruction in a public highway, crossing its track, which was struck by the wheel of plaintiff's vehicle, thereby causing the horse to take fright and run away, and the plaintiff to be thrown from the vehicle and injured ; *Held* error to submit issues involving only defendant's right to use the highway, and whether the user amounted to a partial or complete obstruction.

2. The inquiry should have extended to the negligence of the defendant in thus placing upon a highway obstacles calculated to frighten the horses of travellers.

3. The law relating to responsibility of those who put such objects in a public highway, touched upon, and the distinction between necessary and unnecessary instruments of alarm, pointed out by RUFFIN, J.

CIVIL ACTION tried at July Spring Term, 1882, of GUIL-FORD Superior Court, before *Gilmer, J.*

This action is brought to recover damages for personal injuries sustained by the feme plaintiff while travelling on a public highway, and alleged to have been caused by the defendant's negligence.

The complaint alleges that while going from her home in the country to the town of Thomasville, travelling in a buggy, the feme plaintiff was forced to cross the track of the defendant's railroad at a point near said town upon a bridge which had been hitherto constructed by the defendant; and that upon the bridge on the day in question the defendant had negligently placed one of its hand or dump cars, partly obstructing the same, and so narrowing the passage across it, that whilst attempting with the utmost care to drive over it, the wheel of her buggy struck the dump-car and put the same in motion, whereby her horse became frightened and unmanageable and ran away, throwing her from the buggy and inflicting upon her serious and permanent injuries.

The answer of the defendant denies that the plaintiff was injured because of its negligence or that of its servants.

On the trial the following facts appeared: The highway travelled by the plaintiff crosses the track of the railroad used by the defendant company near Thomasville, at grade.

On each side of the track, ditches had been cut something over two feet deep, which were spanned by bridges each eight feet long and sixteen feet wide—the company owning one hundred feet on both sides of the track—which span was cleared so that the bridges were plainly in view to persons approaching them.

On the day of the accident, the section-master on the defendant's road, who had charge of the hands employed in and about the road-bed, took a dump-car from the company's shelter which was located about two hundred yards east of the said crossing, and with his hands went to work upon the track—it being their invariable habit to have the dump-car to accompany the hands.

Their work that morning was about seventy-five yards from the crossing, and at seven o'clock the section-master anticipating the passage of trains, and in order that they might pass safely, moved the dump-car to the crossing and then had it taken from the track and placed partly upon one of the bridges mentioned.

The car measured six feet one way and six and a half the other, and as loaded at the time weighed some fifteen hundred pounds. Upon the car were some tools to be used by the hands, their coats and buckets containing their rations for the day, two kegs containing spikes and two red flags some twelve by eighteen inches in size, and fastened to handles three feet long—the handles being set in the kegs so that only the red flannel could be seen above their tops.

The flags were carried for the purpose of signaling trains, and it is the custom on all railroads to have such a car to accompany the section hands and to bear upon it the articles before enumerated.

About eight o'clock the *feme* plaintiff, riding in a buggy drawn by a gentle horse and which she had been accustomed to drive over the same route for two years, attempted

to pass over the crossing, but in doing so the wheel of her buggy struck against the dump-car at which the horse took fright, and ran away, and threw her upon the ground whereby she was seriously injured. ·

It was also shown in evidence that during the day and while the car occupied the same position upon the bridge, five wagons having wider treads than the plaintiff's buggy, passed the bridge without coming in contact with the car.

At the close of the evidence the judge prepared the following issues, as those which should be submitted to the jury :

1. Was there space left upon the bridge sufficient for the plaintiff with ordinary care to have passed with her horse and buggy ?

2. Were the injuries to the *feme* plaintiff caused by the negligence of the defendant?

3. What damages did she sustain?

After the argument of counsel had somewhat progressed, His Honor announced that upon reflection he had concluded to have the jury to ascertain the facts merely, without their considering any mixed question of law and fact, and thereupon he withdrew the issues previously prepared, and in lieu thereof submitted the following :

1. Did the injury occur at a public crossing of the defendant's railroad ?

2. Was the dump-car put upon the crossing by the defendant's servants?

3. Was there space left unoccupied by the dump-car sufficient for a person exercising ordinary care, to drive a horse and buggy over the crossing without striking the car ?

4. Did the plaintiff's buggy-wheel strike the dump-car, and thereby the horse become frightened and running away cause her to be injured?

5. In what sense was the plaintiff damaged ?

The plaintiffs excepted to the change of the issues as

made by the judge, and also to the sufficiency of the substituted issues, and they tendered other issues as being the proper ones, amongst which were the following:

1. Did the defendant carelessly and negligently cause and allow one of its dump-cars to be placed and remain on the bridge or crossing of its railroad?

2. Was the highway at said crossing obstructed by the dump-car so as to prevent the free passage of the plaintiff?

3. Was she injured by the negligence of the defendant?

4. Did she use ordinary care in driving over the bridge?

5. Did the plaintiff's horse become frightened (while crossing) at the dump-car or anything thereon?

These issues were rejected by the court, and the plaintiffs excepted.

In substance the verdict of the jury was that the injury to the plaintiff occurred at a public crossing of the defendants' road, upon which the dump-car had been placed by its servants; that there was space left upon the crossing, unoccupied by the car, sufficient for a person exercising ordinary care to drive a horse and buggy over, without coming in contact with the car, and that the injuries to the plaintiff resulted from the fact that the wheel of the buggy struck the car, and caused her horse to take fright and run away. Thereupon judgment was rendered that the defendant go without day, and the plaintiffs appealed.

*Messrs. Scott & Caldwell,* for plaintiffs.
*Mr. David Schenck,* for defendant.

RUFFIN, J. In the opinion of this court, the plaintiffs have just cause to complain of the action in the court below in respect to the issues submitted to the jury.

As framed and responded to, they present the plaintiffs' case solely with reference to the defendant's right to use the highway, and make it to depend upon the single question,

whether the user amounted to a partial or complete ob-
struction of the passage across the bridge. His Honor in
fact throughout the entire trial seems to have considered the
case only from this one point of view—as also did the de-
fendant's counsel who argued the cause before us—thus ex-
cluding all inquiry as to the defendant's negligence in put-
ting into the highway an object of a character likely to
alarm the horses of those who might pass along it, which
inquiry is certainly material to the plaintiffs' right of ac-
tion, and we think fairly raised by the pleadings.

That one may be responsible for injuries resulting from
negligently and unnecessarily putting into a highway ob-
jects likely to frighten horses of ordinary gentleness, is
shown by the authorities.

In Wharton's Law of Negligence § 107, it is said, that in-
asmuch as it is neither unnatural nor unusual for horses,
when travelling, to become frightened at extraordinary
noises or sights, so therefore he, who upon a road thus trav-
elled by horses, makes such noises or exhibits such specta-
cles, is liable for any damages caused by their taking
fright.

The same author at section 836 notes the distinction be-
tween " necessary and unnecessary instruments of alarm,"
and says that the former—such for instance as a steam
whistle on a locomotive, or the like—being essential to im-
portant industries, are tacitly, if not expressly, licensed by
the state, and the necessary use of them is not negligence,
even though animals should be frightened thereby and in-
jury ensue; though it is otherwise, he declares, *when the use
is not necessary to the industry.*

In accordance with the principle thus laid down by the
text-writer, the supreme court of Massachusetts in *Jones* v.
*R. R. Co.*, 107, Mass., 261, held the defendant to be liable for
injuries sustained by the owner of a horse that took fright
at a derrick, erected upon the company's lands, by swinging

an arm over the track; such an object, they declared, being calculated to terrify animals.

Of course the responsibility of the defendant in this action, depends upon the question, whether the use which it was making of the highway at the time of the plaintiff's mishap, was a reasonable one or not, and this in turn depends upon the character of the object, the urgency of the occasion, the manner in which the road was frequented, and the hazard to travellers attending an obstruction at the particular locality.

These are all matters to be determined by a jury under such instructions with regard to the law, as may be given them by the court; but as to which it is not proper that this court should intimate an opinion at the present.

The issues submitted are not in themselves objectionable, but they touch only one phase in the plaintiffs' case, and it is due to them that the other should be passed upon also, and therefore there must be a *venire de novo.*

Error.                                    *Venire de novo.*