JOSEPH DUNN v. THE WILMINGTON & WELDON RAIL-ROAD CO.

(Decided March 28 1899).

*Negligence—Obstruction of Public Street—Practice—Evidence.*

1. Where the question is, whether there is sufficient evidence of the negligence of the defendant to go to the jury, the evidence must be construed in the light most favorable for the plaintiff.

2. The use of the highway belongs to the public by common right, and no one may obstruct it without paramount necessity.

3. Whatever renders dangerous the use of a highway, whether placed in it or near it, is an obstruction.

4. Unnecessarily to keep an engine, under a head of steam, in dangerous proximity to a highway, is strong evidence of negligence.

CIVIL ACTION to recover damages for personal injury suffered by the plaintiff from being thrown from his wagon, his horses taking fright from the negligent letting off steam by the defendant from its engine on a side-track, along a public street in the town of Warsaw, tried before *Robinson, J.,* at Special December Term, 1897, of DUPLIN Superior Court.

The issues were:

1. Was the plaintiff injured through the negligence of the defendant?

2. Did the plaintiff, by his negligence, contribute to his injury?

3. What damage is the plaintiff entitled to recover?

His Honor instructed the jury, upon the whole evidence, to answer the first issue, "No."

Plaintiff excepted. Verdict and judgment for defendant. Plaintiff appealed.

The evidence fully appears in the opinions filed in the cause.

*Messrs. Allen & Dortch,* and *Simmons, Pou & Ward,* for plaintiff (appellant).

*Messrs. Junius Davis* and *H. L. Stevens,* for defendant.

DOUGLAS, J., renders the opinion of the Court.

FAIRCLOTH, C. J., files dissenting opinion, FURCHES, J., concurring therein.

DOUGLAS, J. This is an action to recover damages on account of personal injuries received by the plaintiff through the alleged negligence of the defendant, in causing or permitting steam to escape from one of its engines while standing in or near a public street, whereby the horses driven by the plaintiff became frightened, ran away and severely injured the plaintiff. The usual issues were submitted, the first being as follows: "Was the plaintiff injured by the negligence of the defendant?" The Court directed the jury to answer this issue in the negative, which ended the case.

The following facts appear by evidence or admission: The defendant's side-track on which the engine was standing ran along and immediately adjoining a public street leading to the warehouse of the defendant and much frequented.

On the day of the injury, about one o'clock, the plaintiff, driving a team with a loaded wagon, drove past the engine to the warehouse, where he unloaded the goods. He then came back the same street, and while directly opposite the engine the horses were frightened by steam escaping therefrom, which came into the street near and directly towards them. The horses ran and threw the plaintiff out of the wagon, thus causing the injuries of which he complains.

The engine came regularly into the town of Warsaw every morning about 8 a. m., and remained until its return trip, about 4.30 p. m. During the eight hours intervening it was, prior to the accident, kept on the side-track, where it was when the plaintiff was injured. It was not necessarily there, but could have been kept without practical inconvenience on another side-track below the warehouse, where there is little passing, or it could have been placed on the Clinton track, where it would have been out of the way. Since the injury to the plaintiff, it does not stand where it did, but stands below the warehouse.

What caused the escape of the steam is not clearly shown. One of the defendant's witnesses testified that "an engine standing generates steam, and pops off," while another of its witnesses stated that "the noise described by the plaintiff could not have been made except when the donkey-pump was working, or when the injector is put on," thus requiring human agency. It was admitted that the engine was in good condition and was standing on the side-track, and that Mack Jones, who was then on the engine, was a fireman in the employ of the defendant.

There was other evidence, some of which tended to prove the contributory negligence of the plaintiff, but this can not be considered on a motion for nonsuit or a direction of the verdict upon the issue of the defendant's negligence.

The case as now before us presents the single question, whether there was sufficient evidence to go to the jury as to the negligence of the defendant, and for the purpose of this inquiry the evidence must be construed in the light most favorable for the plaintiff. These principles have been fully and recently considered and affirmed in *Spruill v. Ins. Co.*, 120 N. C., 141; *Cable v. R. Co.*, 122 N. C., 892; *Cox v. R. Co.*, 123 N. C., 604, and many other cases.

We think there was sufficient evidence to go to the jury tending to prove the negligence of the defendant arising not only from negligently causing or permitting the escape of steam, but also from keeping the engine for more than eight hours during the business part of the day in a position where it might naturally frighten the horses of those lawfully upon the street. *Andrews v. R. Co.*, 77 Iowa, 669. Railroad companies are, at least in contemplation of law, organized primarily for the public benefit, and it is this public use that is the sole foundation for the extraordinary powers that are conferred upon them, such as the right of condemnation. Given such exclusive privileges, they are held to an equal responsibility; and they will be protected in the proper exercise of all lawful acts that may be reasonably necessary in the performance of their exacting duties to the public as common carriers. If it had been necessary for any public purpose to have kept the engine by the side of a public street, then the mere act would not of itself have been negligence, but to keep an engine under steam in a place of danger to the public when it could just as well have been placed beyond all opportunity of danger, is at least strong evidence of negligence. It is true the mere presence of the engine was not *causa causans* of the injury to the plaintiff, but it was certainly *causa sine qua non*, without which the injury would not have happened.

Whether the steam escaped through the automatic safety-valves or was blown off in any way by the fireman is immaterial to the issue, as either might be negligence. It is urged that safety-valves are necessary to prevent explosion. That may be true, but was it necessary to keep up for so long a time a head of steam sufficient to open these valves? It is also said that it becomes necessary to put on the injector so as to force water into the boiler when it gets too low, but was it necessary to do so at the precise moment when the plaintiff was passing? All these are questions for the jury.

The use of the highway belongs to the public by common right, and no one can obstruct it without paramount necessity. This is equally true whether the obstruction is in the highway or so immediately adjacent thereto as to obstruct its use. It is unnecessary to add that whatever renders dangerous the use of a highway is an obstruction. The public has certainly as much right to the highway as the railroad company has to its right-of-way, and each should respect the relative rights of the other. The rule is the same whether they intersect or are merely contiguous. The public would not be permitted to unnecessarily obstruct the track or to do anything that would endanger a passing train, neither must the company unnecessarily obstruct the highway nor place in useless jeopardy the life of the individual. We think that the cases of *Myers v. Railroad,* 87 N. C., 345, and *Harrell v. Railroad,* 110 N. C., 215, fully decide the principles now under discussion, but as they are of increasing importance it may not be amiss to show that they are practically sustained by the uniform current of authority.

The following extracts from leading authors will show the general tenor of decisions, many of which are therein cited: "A railway company is liable to indictment if it unreasonably obstructs a highway, either by its trains or by leaving

DUNN v. RAILROAD CO.

objects thereon *or near thereto*—as a hand-car—which are calculated to frighten horses; and it is liable civilly for all the damages that ensue therefrom." 3 Wood on Railways, section 336. "And generally, if these companies do any acts in a public street or highway which are detrimental to the public, without authority, or, if with authority, they exercise the powers conferred in an improper or negligent manner, they are liable to indictment so far as the rights of the general public are infringed, and to a civil action in favor of any individual who is specially injured thereby." 3 Wood, *supra,* section 336. "Although a railroad company is not liable under ordinary circumstances for the fright of horses, caused by the operation of its road in the usual manner, it is liable for frightening horses and causing injury by unnecessary and excessive whistling or letting off steam under such circumstances as to constitute negligence or willfulness." Elliott on Railways, section 1264. "When a railway company is entitled by law to run its trains along a street, it is not liable for damages caused by the horses of a traveller taking fright at the *necessary* blowing off of steam from one of its locomotives; but if the steam were blown off *negligently* it would be liable." 1 Thompson Negligence, section 15. "In most cases, whether the blowing of the steam whistle was a reasonable and proper exercise of the company's rights, is a question of fact for the jury." *Ibid.* "Neither is the company responsible for the fright caused by its giving, with ordinary care, signals required by statute or by ordinary prudence upon the approach of its trains; but such noises as blowing whistles, sounding large bells, *or letting off steam made without necessity,* when animals are near and likely to be frightened, and when ordinary care would have permitted or dictated a postponement of the noise

124—17

until the animals were out of hearing, will sustain a verdict of negligence." 2 Shearman & Red. Neg., section 426.

In the English case of *Railroad Co., App., v. Fullarton, Resp.,* 14 C. B. N. S., 108 C. L. R., 54, very similar to that at bar, it was held that where a railway crosses a highway on a level at a place where there is considerable traffic, the fact of the engine-driver blowing off the steam from the mud-cocks in front of the engine so as to frighten horses waiting to pass over the line, was sufficient to warrant the conclusion that the company had been guilty of actionable negligence, ERLE, C. J., saying for the Court that "it is clear that the company have not used their railway with that attention to the rights and the saftey of the Queen's subjects which, under the circumstances, they were bound to exercise."

In *Jones v. Railroad,* 107 Mass., 261, it was held that "a railroad corporation is liable for injuries sustained by a traveller driving a horse upon the highway with due care, through the fright of the horse occasioned by a derrick which the corporation maintained, projecting over the highway so as naturally to frighten passing animals, although it was maintained for the purpose of loading and unloading freight on the cars."

In the well-considered case of *Railroad Co. v. Barnett,* 59 Pa. St., 259, 263, where the engine of the defendant, having given no notice of its approach, whistled under a bridge whilst a traveller was passing over it, whereby his horses took fright, ran off and injured him, the defendant was held liable, the Court saying: "The degree of care demanded of the company in running its train depended on circumstances, and whether it observed due care in approaching the bridge, or was guilty of negligence in not sounding an alarm-whistle, was a question which properly belonged to the jury to determine. If there had been no evidence of negligence or any

facts or circumstances from which negligence could be fairly inferred, the Court ought not to have submitted the question to their determination. But it is as clearly the duty of a railroad company as it is of a natural person to exercise its rights with a considerate and prudent regard for the rights and safety of others, and for injuries occasioned by negligence both are equally responsible. Nor is it any excuse or justification that the act occasioning the injury was in itself lawful or that it was done in the exercise of a lawful right, if the injury arose from the negligent manner in which it was done. If there was no danger to the persons and property of those who might be travelling along the public road in running its trains without giving any notice of their approach to the bridge, then the company is not chargeable with negligence in not giving it. But if danger might be reasonably apprehended, it was the duty of the company to give some notice or warning in order that it might be avoided.....The sounding of the alarm whistle as the train was passing under the bridge was the cause of the horses becoming frightened and running away, and the injury to the plaintiff was the result. This was an act of gross negligence, and a sufficiently proximate cause of the injury to render the company liable therefor."

In the recent case of *Tinker v. Railroad Co.,* 51 N. E. Rep., 1031, where the plaintiff was injured by being thrown from a wagon in consequence of the horse's becoming frightened at two old pieces of timber lying on the side of the highway, about ten feet from the travelled part, it was held that whether so placing the timber was reasonably necessary in the conduct of repairs, and not an unreasonable interference with the rights of the public, was a question for the jury, and upon their finding the defendant was held liable. After stating that the law recognized the right of temporary obstruction of the highway under certain circumstances, the

Court lays down the following rule, quoted from *Flynn v. Taylor,* 127 N. Y., 596, which meets our approval: "Two facts, however, must exist to render the encroachment lawful: (1) The obstruction must be reasonably necessary for the transaction of business. (2) It must not unreasonably interfere with the rights of the public."

The rule that the existence of obstructions in a street is such evidence of negligence as requires of the authorities explanation in order to escape liability, is laid down in *New York City v. Sheffield,* 4 Wallace, 189, 196, and we do not see why it should not apply to the circumstances of the case at bar. We do not think there was sufficient evidence of wantonness or malice to justify an issue as to punitive damages.

For the error of his Honor in directing a verdict upon the issue, thus taking the case from the jury, a new trial must be ordered.

New trial.

FAIRCLOTH, C. J., dissenting. I am unable to hold that the evidence was sufficient to let the case go to the jury. This question has probably been discussed by every Court in the Union. From those I have seen, the rule seems to be that the evidence should be such as would satisfy the mind of a reasonable man that the defendant was guilty of negligence, and the burden of showing negligence is upon the plaintiff.

In the present case there is not a *scintilla* of evidence that the steam was unnecessarily let off, or that it was done in a careless manner or recklessly, in disregard of the plaintiff's rights. *Wittowski v. Wasson,* 71 N. C., 451; *Kahn v. R. Co.,* 115 N. C., 638. "There is, or may be, in every case a preliminary question for the Judge, not whether there is absolutely no evidence, but whether there is more than a *scintilla* of evidence upon which a jury can properly proceed to find

a verdict for the party introducing it, upon whom the burden of proof is imposed." *Commissioners v. Clark,* 94 U. S., 278. It is well settled, thus: "While negligence is an inference to be drawn from the facts, the existence of the facts themselves must not be left to conjecture, but facts must be established by evidence which would warrant a *reasonable* man in inferring negligence." *Railroad v. Clark,* 23 L. R. A., 504. The question is not what by possibility might be proved at another trial, but what has been proved in this case.

The evidence on the part of the plaintiff was, without reciting it in detail, in substance: That the defendant's engine was standing on the side-track of defendant's road, about half way between two street crossings in the town of Warsaw; that the plaintiff drove his team by the engine along the adjacent street to the defendant's warehouse, unloaded and returned on the same street, and when opposite to the engine the engineer let off some steam which flew in the direction of the horses and frightened them; that they dashed towards the sidewalk, threw the plaintiff out of his wagon, and he was thereby injured.

The defendant's evidence was in substance: That the engine was in good condition, was at its *usual* place when not in action; that there were times when it is necessary to turn off steam, whether standing or in motion, to avoid danger to the engine; that the noise was not loud and unnecessary, and that the plaintiff did not have his reins in hand at the time of the accident.

His Honor instructed the jury upon the whole of the evidence to answer the first issue, "No," and plaintiff appealed; that is, "Was the plaintiff injured through the negligence of the defendant?"

I think his Honor's ruling should be affirmed.

FURCHES, J.   I concur in the dissenting opinion.