FOSTER *v.* EAST JORDAN LUMBER CO.

1. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Where, in an action for personal injury, the testimony as to plaintiff's conduct is conflicting, the question of contributory negligence is for the jury.

2. RAILROADS—MANAGEMENT OF TRAINS—FRIGHTENING HORSES.

A railroad company is not liable for the frightening of horses resulting from the ordinary movement of its trains, but is liable for damages caused by fright resulting from its doing anything unusual or unnecessary, naturally calculated to frighten ordinarily gentle horses.

3. SAME—QUESTION FOR JURY.

Whether a railroad company, unnecessarily placing its locomotive in an obscure position near a traveled street and then putting a blower in operation, causing a traveler's horse to run away, was negligent in failing to learn of the approach of the traveler, or in unnecessarily putting the blower in operation, *held,* questions for the jury.

4. SAME—PROXIMATE CAUSE.

Defendant's negligence in frightening the horse was the proximate cause of a personal injury resulting to plaintiff from the collision of plaintiff's vehicle with that of a third person while the horse was unmanageable from fright.

5. EVIDENCE—OPINIONS—EXAMINATION OF WITNESS.

Where, in an action for personal injuries occasioned by plaintiff's horse being frightened, the court sustained an objection to a question asked a witness as to what frightened the horse, and stated that it might be well to find out if the witness knew, and the party asking the question failed to lay the proper foundation, the sustaining of the objection was not error.

6. Appeal—Questions Raised in Supplemental Brief—Consideration.

   Objections first raised in appellant's supplemental brief will not be considered.

Error to Charlevoix; Mayne, J. · Submitted June 23, 1905.   (Docket No. 60.)   Decided September 19, 1905.

Case by Frank A. Foster against the East Jordan Lumber Company for personal injuries.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*Dennis L. Rogers* (*Pratt & Davis*, of counsel), for appellant.

*Alfred B. Nicholas* (*J. Ernest Converse* and *E. N. Clink*, of counsel), for appellee.

Blair, J.   The plaintiff, a physician, brought this action against the defendant, a lumbering corporation, to recover damages for personal injuries alleged to have been sustained by plaintiff by reason of the negligence of defendant in so managing a locomotive on its logging railroad as to frighten plaintiff's horse and cause him to run away.

The occurrence took place at defendant's railroad crossing of Mill street in the village of East Jordan, in February, 1901, when the plaintiff, accompanied by two ladies, was driving a single horse attached to a Portland cutter. The crossing is located near the east end of the bridge which spans the south arm of Pine Lake and connects the village of South Arm with the village of East Jordan, and plaintiff approached the crossing along this bridge, the east end of which connects with Mill street, forming a continuous highway and the main thoroughfare between the two villages.   The east shore of the lake for upwards of a mile in this locality is used by defendant as a millyard and piling ground for logs and lumber, and as a switchyard for its logging railroad.   The lumber in the yard was piled along here in several tiers, running up quite

close to the street line at Mill street, so that the plaintiff's view to the south up defendant's track as he approached the crossing was limited to the street lines. At the time of the accident, and for about two hours prior thereto, one of the defendant's locomotives, under steam, was standing at a point from 30 to 90 feet south of the crossing, as estimated by different witnesses. The snow was deep, and banked up on either side, leaving a narrow beaten track along the street.

Plaintiff testified that he stopped, looked, and listened when on the bridge some 60 or 80 feet from the crossing, and again on Mill street, from 25 to 30 feet from the crossing, and neither saw or heard anything to indicate the proximity of the locomotive; that when the horse's head was 10 or 12 feet from the track, he suddenly took fright and started to run, and about the same time plaintiff heard the sound of escaping steam. " I heard a rumbling sound just as the horse took fright. I have heard a blower on an engine, and this sounded like the sound of a blower." Plaintiff's horse became unmanageable, ran away, and collided with the bunks on a pair of lumber bob sleighs, and plaintiff was severely injured. There was evidence from which the jury might properly find that the horse was roadwise, gentle, and tractable. The jury found a verdict for the plaintiff, and returned answers to two special questions submitted on behalf of defendant, as follows:

" 1. Did the plaintiff stop his horse and listen for the sound of a locomotive just before crossing defendant's railroad track ?

"*A.* Yes.

" 2. Could the plaintiff hear the sound of the steam escaping from the cylinder cocks, safety valves, and whistle of the locomotive in question at the time he stopped his horse and listened, just before crossing defendant's railroad track ?

"*A.* No."

. The principal questions of law for our consideration are presented by assignments of error 7 to 13, inclusive, to

the effect that the court erred in not directing a verdict for defendant for the reason that the proofs showed that plaintiff was guilty of contributory negligence and defendant was not guilty of any negligence, or, at least, of any negligence which was the proximate cause of the injury.

The testimony was conflicting as to the plaintiff's management of his horse and his own conduct; but if the jury believed his testimony and that of the ladies with him and others called by him, as they evidently did from their answers to the special questions, they could properly find him free from contributory negligence, and the court was not in error in submitting the question to them.

The fundamental question in the case is whether, under the evidence, any negligence was shown on the part of the defendant. It is well settled that a railroad company is not liable for the fright of horses resulting from the ordinary use, movement, or situation of its engines, cars, or trains, and that it has a lawful right to make all such noises as are necessarily connected therewith. It may, however, become liable if in such use of its property it does anything unusual or unnecessary, naturally calculated to frighten ordinarily well-broken and gentle horses. 2 Thompson on Negligence, § 1908; *Hinchman* v. *Railroad Co.*, 136 Mich. 341; *Geveke* v. *Railroad Co.*, 57 Mich. 589; *Dunn* v. *Railroad Co.*, 124 N. C. 252; *Petersburg R. Co.* v. *Hite*, 81 Va. 767. In the *Hinchman Case* the plaintiff attempted to drive across defendant's highway crossing while the tender of its locomotive was something over 10 feet distant from the planking of the crossing, but still on the highway. Just as plaintiff got to the edge of the planking, steam was emitted from the engine, which frightened the horse, and plaintiff was injured. Mr. Justice CARPENTER, delivering the opinion of the court, said:

"The evidence of the plaintiff did not indicate with any certainty just what caused the emission of steam, and defendant's engineer testified positively that he did no act to occasion its emission. It also appeared that there was

an automatic safety valve, through which the steam which frightened plaintiff's horse might have been emitted.

"It is the contention of the defendant that we are bound to assume that the emission of the steam was through the automatic safety valve, and numerous authorities are cited to the proposition that such emission is not negligence. There was testimony from which the jury might have inferred that, though the steam was emitted from the automatic safety valve, its emission could have been prevented by appliances under control of defendant's engineer, and that defendant's engineer could have foreseen this emission and have provided against the consequences by moving his engine farther from the crossing. From this evidence, we think that the jury might infer negligence."

In the case at bar there was no automatic valve, but a blower, which must be operated by the engineer or fireman, and it follows, necessarily, from the decision in the *Hinchman Case*, that the negligence of the defendant would have been properly submitted to the jury, if, as in that case, the enginemen had been aware of his presence.

Is the defendant free from negligence in this case, as a matter of law, because its servants were not aware of plaintiff's approach ? In the case of *Geveke* v. *Railroad Co.*, supra, it was said that—

"It was for the jury to say whether, under all the circumstances, it was negligence for the company's agents not to have discovered the plaintiff's team before, and to allow the steam to escape in the manner it did just at the time the plaintiff was making the crossing. We have discovered nothing in the record showing any necessity for opening the cylinder cocks just at that time."

So we think it was a question for the jury in the case at bar whether the defendant's employés ought not to have contemplated that a traveler might be near the crossing at the time the fireman put on the blower, and to have refrained from doing so unnecessarily.

Defendant had placed its locomotive so near to an important and much-traveled public thoroughfare that the putting on of the blower was likely to frighten any horse

that might be near the track, and was bound to know that a horse might come upon the crossing at any time. It had so placed the locomotive that it was entirely concealed from a traveler coming from the west, and had left it there under steam for two hours prior to the accident; and it was open to the jury to find from the evidence that it was not necessary to have placed the engine at this particular point so near the highway, but that it might have been stationed much farther away. There was also evidence that the use of the blower was entirely unnecessary. The engineer was absent at the time of the accident, having left the engine in charge of the fireman. He testified:

"*Q.* When the engine is fired up, what is customary to be done with the blower?

"*A.* After your steam is up, you have no use for the blower.

"*Q.* Was the steam up when you left the engine?

"*A.* Yes, sir."

As to whether the blower was in use at the time of the accident was a question of fact for the jury. Chester Thompson, a witness of the accident, testified that he saw the fireman "turn the blower on a very short time before I saw the doctor," and that he first saw the doctor after the horse began to run away. Plaintiff testified that he had heard a blower on an engine, "and this sounded like a blower." The fireman testified that the blower was not on. If the blower was on at the time of the accident, it must have been put on during the absence of the engineer, and, according to his testimony, unnecessarily. The placing of the engine so near the highway, and leaving it there so long behind the lumber piled by defendant on its own premises, and the unnecessary use of the blower, made it proper for the court to submit the question of defendant's negligence to the jury.

The contention that the alleged negligence of the defendant was not the proximate cause of the injuries is disposed of by the case of *Hinchman* v. *Railroad Co.,* supra.

141 MICH.—21.

Defendant's counsel further insist that the court erred in sustaining the objection of plaintiff's counsel to the following question to the witness Nelson Shaw:

"*Q.* What, in your opinion, did that horse of Dr. Foster's get frightened at?"

Mr. Shaw saw plaintiff when he was on the bridge, and it was with his lumber sleigh that plaintiff's cutter collided. He stopped his team some 40 or 50 feet east of the crossing to wait for plaintiff to pass him. Upon the propounding of this question the following occurred.

"*Mr. Clink:* We object to that as incompetent and calling for a conclusion.
"*The Court:* I don't know as a man looking at that distance could testify. (Objection sustained. Exception for defendant.)
"*The Court:* It might be well to find out, possibly, if he knew.
"*Q.* Where did the horse commence to shy towards your sleighs?
"*A.* About the time, I think, he came even with my horses' heads.
"*Q.* How far were your horses' heads from the railroad track, in your judgment?
"*A.* Don't know how far, possibly 40 or 50 feet."

In *Geveke* v. *Railroad Co.*, supra, it was held competent for the plaintiff's companion "to give his opinion as to what frightened the team. He was driving them at the time, and his attention was directed to the surroundings, and his observation must have enabled him to form some judgment." In *McCullough* v. *Railway Co.*, 101 Mich. 234, the question was again before the court, and Mr. Justice HOOKER, delivering the opinion, said:

"Defendant complains that the plaintiff's husband was permitted to testify that the horse was frightened by the train, upon the ground that the question was for the jury and that the evidence involved a conclusion. In *Geveke* v. *Railroad Co.*, 57 Mich. 589, such evidence was held competent, where the horses were immediately in front of a locomotive when the engineer allowed steam to escape

from its cylinders; and in this case, the other evidence clearly shows the cause of the fright of the horse, and the opinion of the witness, if inadmissible, worked no injury to the defendant."

If the testimony of the driver as to the cause of the fright is admissible, the testimony of any other witness of the entire transaction must be equally admissible, after showing that his knowledge of the surroundings is sufficient to warrant him in expressing an opinion.

In the case at bar, after overruling the objection, the court said to counsel: "It might be well to find out, possibly, if he knew." We think this was an intimation to counsel that the court would hold the question open for him to test the witness' knowledge, since it did not appear to the court to be shown that the witness could state what the cause was. The substance of the entire testimony of the witness as to the action of the horse, bearing upon the question put to him, was as follows:

"I got down there, and noticed a horse coming across the bridge. They came lively as they came on, and I see it was Dr. Foster and two young ladies sitting in the cutter coming, coming along at quite a good gait, and I see we were going to come on the bridge at one time. I sheared off to the right, and thought I would give him his part of the road. His horse, as he went to go by mine, shied, I think, and struck the end of the bunk on the left-hand side of the bunks—on the nigh side of the sleighs. I think he struck my back bunk with his cutter, and his horse broke loose and yanked him over the dashboard, and he laid there on the ground for a minute.  *  *  *

"I saw the horse coming over the bridge; do not know as I could tell how fast. It was a good lively gait. Horse had a nice driving appearance—head up and traveling right along.

"*Q.* Did he come to a stop before he got to that railroad track ?

"*A.* Not that time I see him until he hit my sleigh. *  *  *

"That 40 or 50 feet was towards Mr. Palmiter's, and horse continued about the same gait until he struck my sleighs; if anything, a little faster from the time I saw

him until he hit my sleigh.  I was in a position that I could see him plainly, and the horse was trotting all the time until he struck my sleigh.  When I first saw the horse on the bridge, he wasn't far from the middle of the draw.  The horse wasn't running when he struck my sleigh."

It does not appear clearly from this testimony that the horse was frightened at all, certainly not till he went to go by the witness' team; and defendant's counsel, not having seen fit, after the intimation of the court, to supply a proper foundation for the question, the ruling was not erroneous.

There are several points argued in defendant's supplemental brief relative to the declaration and proofs which we do not consider, for the reason that they are raised for the first time in that brief.  We have considered the other assignments of error not covered by what has already been said, but do not find the allegations sustained; and the judgment is affirmed.

MOORE, C. J., and McALVAY, OSTRANDER, and HOOKER, JJ., concurred.