DOTSON *v.* MICHIGAN CENTRAL RAILROAD CO.

1. APPEAL AND ERROR—QUESTION OF FACT—RAILROADS.
  In an action for personal injuries alleged to have been caused by defendant's engine and train frightening plaintiff's horse, a disputed question of fact as to where the train stood in reference to the crossing was determined according to plaintiff's claim by the verdict of the jury in her favor.

2. RAILROADS—NEGLIGENCE—OPERATION OF TRAIN—QUESTION FOR JURY.

> In an action for personal injuries alleged to have been caused by defendant's train and engine starting up and frightening plaintiff's horse, when she was crossing a viaduct over the track, evidence to show that defendant operated its train in such an unusual and unnecessary manner as to cause the fright of plaintiff's horse would raise a question of fact for the jury.[1]

3. SAME.

> A railroad company is not liable for the fright of horses resulting from the ordinary use, movement, or situation of its engines, cars, or trains, and it has a lawful right to make all such noises as are necessarily connected therewith.

4. SAME—DIRECTED VERDICT.

> Where plaintiff's testimony failed to show that any unusual or unnecessary noises occurred in the starting of the train, defendant's motion for a directed verdict should have been granted.

5. SAME—INSTRUCTIONS—VIADUCT—NEGLIGENCE.

> An instruction by the court below that it is the duty of a railroad company, before starting its train, to observe whether any one is crossing on the viaduct, and, if there is, to refrain from starting until the traveler has an opportunity to get across, is erroneous.

Error to Kalamazoo; Barry, J., presiding. Submitted October 6, 1914. (Docket No. 9.) Decided September 28, 1915.

Case by Constance Dotson against the Michigan Central Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed and no new trial ordered.

*Stewart & Stewart* (*Henry Russel* and *Frank E. Robson*, of counsel), for appellant.

*James S. Dodge* and *Harry C. Howard*, for appellee.

[1] Generally as to liability of railroad for frightening horse on highway or near crossway, see notes in 3 L. R. A. (N. S.) 111, 42 L. R. A. (N. S.) 568, 23 L. R. A. (N. S.) 946.

BIRD, J. The plaintiff recovered a judgment in the trial court for personal injuries which she claims were due to the negligence of the defendant. The defendant assigns error in this court, and the principal error relied upon is the refusal of the trial court to direct a verdict in its behalf.

The record discloses that plaintiff was visiting her parents, who live south and east of the village of Mattawan, situate on defendant's line; that on the morning in question she was driving to the village, and her mother was riding in the carriage with her. The highway to the village was carried over defendant's tracks on a concrete and steel viaduct, with a concrete floor and iron railings. She drove onto this viaduct, and when about midway thereon a freight train, which was standing thereunder, started up, and the noises occasioned by so doing frightened her horse, and it became unmanageable and ran for some distance, throwing both her and her mother out of the carriage, and injuring the plaintiff. The negligence with which the defendant was charged was:

"The starting of the train immediately beneath the horse's feet, without any warning, or giving the plaintiff time to get to a place of safety, and in so doing produced noises which became fear-exciting agencies, and caused the fright of the horse."

We shall consider only the assignment of error which has reference to the refusal of the trial court to direct a verdict in behalf of the defendant.

The question whether defendant was in duty bound to give the statutory crossing signals, where the highway passes over the railway, is a question much discussed in the briefs, and we are urged to determine that question, as it is a new one in this State. In the view we take of the case, that question is not involved. The testimony as to where the train stood was in conflict, but we must assume in the consideration of this

question that the train stood just where plaintiff and her witnesses testified that it did. She testified that the train was headed west; that there were 2 or 3 cars east of the viaduct and 10 or 15 west of the viaduct. If the train were standing in this position, the engine had passed the viaduct from 300 to 500 feet, and we know of no statute which makes it obligatory upon the engineer to give signals for a highway crossing after he has passed it. Neither are we aware of any statute which makes it the duty of the engineer to give any particular signals upon starting his train.

The real question to be considered is whether the defendant, under all the attendant circumstances, operated its train in such an unusual and unnecessary manner as to cause the fright of plaintiff's horse. If there were any evidence to show that it did, then the trial court was right in submitting the question to the jury. That is a question, however, about which counsel disagree. The rule governing such cases was well stated by Mr. Justice BLAIR in *Foster* v. *Lumber Co.,* 141 Mich. 316 (104 N. W. 617). It was there said:

"It is well settled that a railroad company is not liable for the fright of horses resulting from the ordinary use, movement, or situation of its engines, cars, or trains, and that it has a lawful right to make all such noises as are necessarily connected therewith. It may, however, become liable if in such use of its property it does anything unusual or unnecessary, naturally calculated to frighten ordinarily well broken and gentle horses. Thompson on Negligence, § 1908; *Hinchman* v. *Railway Co.,* 136 Mich. 341 [99 N. W. 277, 65 L. R. A. 533]; *Geveke* v. *Railroad Co.,* 57 Mich. 589 [24 N. W. 675]; *Dunn* v. *Railroad Co.,* 124 N. C. 252 [32 S. E. 711]; *Petersburg R. Co.* v. *Hite,* 81 Va. 767."

The testimony of plaintiff on this point follows:

"*Q.* Then what happened?
"*A.* As we got about to the middle of the viaduct the train started to move and the horse became frightened.

"*Q.* I wish you would state whether there was a noise incidental to the train starting.

"*A.* Yes, sir; there was.

"*Q.* Like a train usually starting?    *    *    *

"*A.* It started with the usual noise, the engine with the steam escaping, and the car wheels grinding on the track.

"*Q.* Have you stated all that you can remember about that now, about it starting?

"*A.* That is all I remember.

"*Q.* Whether or not the cars were jerking or jumping?  ·

"*A.* I think they were."

This testimony, given by the plaintiff, was substantially corroborated by her mother. The testimony fails to show that any unusual or unnecessary noises occurred in the starting of the train. The noises mentioned were the grinding of the wheels, the jerking of the cars, and the escaping steam. These, as she admits, are the ordinary and usual noises produced by the starting of a train. The noise produced by the escaping steam must have been considerably lessened by the fact that the locomotive was from 300 to 500 feet west of the viaduct when the train started. Tested by the rule heretofore referred to, plaintiff was not entitled to recover, and defendant's motion for a directed verdict should have been granted.

It is urged that it was the duty of the defendant, before starting its train, to observe whether any one was crossing on the viaduct, and, if there were, to refrain from starting the train until the traveler had an opportunity to get across. The jury were charged in substance to this effect. We are unable to approve of this proposition. Municipalities and railroads are expending large sums of money yearly to separate grades for the protection of the traveling public, and to expedite the movement of trains. If the duty urged were the law, then railway traffic would be delayed, instead of expedited, by carrying the highway over the railroad.

In case the highway was much traveled, a train might find it difficult for several minutes to start; whereas, if it had been a grade crossing, the railway train would have had the preference.

As before stated, we are of the opinion that the plaintiff's own testimony has made her recovery impossible in this case. The judgment will be set aside, and no new trial ordered.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.