KOSCNICKI *v.* PERE MARQUETTE RAILWAY CO.

1. RAILROADS—PERSONAL INJURIES—BLOWING WHISTLE AT CROSSING—NEGLIGENCE—FRIGHTENING HORSE—QUESTION FOR JURY.
     In an action against a railroad company for personal injuries caused by plaintiff's horse running away as the alleged result of defendant's negligent blowing of the locomotive whistle on a highway crossing, disputed testimony as to the location of the engine when the whistle was blown, *held*, to present a question for the jury.

2. Same—Actionable Negligence.

> In such action, if the engineer saw or should have seen the situation plaintiff was in, with his horse in close proximity to the track, and blew the whistle and frightened the horse, thus causing the accident, actionable negligence would be established.

3. Same — Failure to Give Statutory Signal at Crossing — Notice.

> There is no merit in plaintiff's contention that it was actionable negligence on the part of defendant in not blowing the whistle at the distance from the crossing fixed in 2 Comp. Laws 1915, § 8302, where plaintiff testified that he saw the train coming when it was at a distance from the crossing equal to that fixed in the statute.

4. Same—Contributory Negligence.

> Held, that the question of plaintiff's contributory negligence should have been submitted to the jury.

Error to Manistee; Withey, J. Submitted February 4, 1919. (Docket No. 42.) Decided April 3, 1919.

Case by Frank Koscnicki against the Pere Marquette Railway Company for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*Smurthwaite & Campbell,* for appellant.

*Shields, Merriam & Sleeper,* for appellee.

KUHN, J. On February 22, 1917, the plaintiff, having business to transact at the village of Copemish, in the county of Manistee, about five miles distant, left his home about 8:30 o'clock in the forenoon with a horse and cutter to drive to that village. On the day previous there had been a heavy snow storm in that vicinity, and in order to get to the village of Copemish it was necessary to cross the tracks of the defendant railway. He drove from home two and a half miles to the railroad crossing and found that the highway was filled with snow thrown from the rail-

way tracks by the snow plow and thus made im-
passable. He drove back to the next highway running
south and proceeded south and east and crossed the
railway half a mile north of Henry, which is the next
station on the defendant's line south of Thompson-
ville. Plaintiff proceeded to Copemish, where he was
delayed about three hours, and having business at
Thompsonville, which is about three miles north of
Copemish and but a little out of the direct route from
Copemish to his home, he took the highway leading to
that village. Defendant's railway line crosses that
highway between these two towns at about half a
mile south of Thompsonville. The plaintiff arrived
at this crossing at about two o'clock in the afternoon.
As he approached the crossing, and when about 50 or
60 feet from it, he saw a man working on the railroad
tracks, shoveling snow from the tracks into the high-
way. It is plaintiff's claim that this man, who was
an employee of the defendant's railway, beckoned for
him to come on. At the crossing the highway was
packed full of snow to the depth of about five feet,
according to the estimate of the plaintiff, and he drove
his horse to the snow barrier, which was about ten
feet from the crossing. Thereupon, it is his claim,
he got out of the cutter and went to the crossing, and
after some discussion with the man who was there
at work, picked up a pickaxe and attempted to make
an opening through the snow that would permit the
horse to get over the crossing. It is his claim that
while engaged in digging out a passage over the cross-
ing, he saw a train approaching from the south, and
that as soon as he saw the train, he started for his
horse and arrived at his horse's head at about the time
that the locomotive arrived at the crossing. That at
about that time the whistle of the locomotive was
blown, which frightened the horse, the horse turning
around and tearing away from the plaintiff and run-

ning down the highway towards the south. That as the horse tore around and away from the plaintiff, the cutter struck the plaintiff on his side and knocked him down and that he was for a time unconscious, and that as a result three of his ribs were fractured, and that he received other injuries therefrom. This action is brought to recover damages which it is claimed resulted from this accident. The declaration charges the defendant with negligence in that it failed to clear the highway crossing within a reasonable time after the snow was thrown into the highway from the railway track, whereby the plaintiff was detained at the crossing, and also that the engineer or fireman upon the locomotive, having an unobstructed view of the crossing and vicinity, it being a clear and fine day, and while the plaintiff and his horse and cutter were in plain view and were seen, or should have been seen, by the man in charge of the locomotive, just at the time the engine was upon the crossing and within a few feet of the plaintiff and his horse, pulled or blew the locomotive whistle, thereby scaring or frightening the horse to such an extent that, although it was a quiet, tractable horse, it broke away from the plaintiff as stated and caused the plaintiff the injuries alleged. The declaration also charges negligence upon the part of the defendant in that the whistle was not blown or the bell rung or other signal given of the approach of the train until the locomotive was at the crossing. On the trial of the case, at the close of the proofs, the learned trial judge directed a verdict for the defendant on the ground that in his opinion no actionable negligence had been shown on the part of the defendant. Whether or not he erred in directing a verdict is the question before us for review.

Counsel for plaintiff admit in their brief that the obstruction of the highway by the defendant was not the proximate cause of the injury to the plaintiff, but

that it simply accounts for the presence of the plaintiff
at the time and place.   Therefore, so far as this dis-
cussion is concerned, we need not consider the claim
of the declaration of actionable negligence on the part
of the defendant in not clearing the crossing of the
accumulated snow.

But whether or not the learned trial judge did not
err in eliminating the question of the claimed im-
proper blowing of the whistle at the crossing presents
a more serious question.   The plaintiff was sworn and
testified with reference to how the accident happened,
as follows:

"*Q.* Now, after you got back to your horse just tell
us what happened?

"*A.* I got back to my horse and I turned the horse
pretty near half way around and the train was going
right across over the crossing; and then they pulled
the whistle and the horse got scared and made a jump
and tore out of my hands and the cutter hit me right
in the side and I fell over right in the snow and I was
lying there; and after I was coming to I seen the
horse had turned around himself and rolled around
in the snow in that cutter and came right into the
road and started to go back to Copemish that way
and Mr. Newt. Standish caught her and brought her
back.

"*Q.* What frightened the horse and caused the horse
to run, if you know?

"*A.* The train.

"*Q.* Well, what about the train?

"*A.* Right on the crossing they pulled the whistle,
then the horse got scared."

In other parts of his testimony he reiterated that
the whistle was blown at the crossing, but upon being
recalled for further direct examination, he testified
as follows:

"*Q.* Where was the engine of the train, Mr. Kosc-
nicki, when the whistle was blown, in relation to this
crossing?

"*A.* Right on the crossing. That is where I understand it was—right on the crossing.

"*Mr. Shields:* I ask that the balance of that answer, whatever it was, be stricken out.

"*The Court:* The understanding?

"*Mr. Shields:* Who told you it was there?

"*The Court:* Well, his understanding is not competent."

The trial judge was of the opinion that the modification by the plaintiff of his testimony by the statement that it was the understanding of the plaintiff that it was at the crossing, made his testimony as to the whistle being blown on the crossing of no value. A reading of the plaintiff's testimony indicates that he was not very familiar with the English language, having been foreign born, and undoubtedly was careless in the use of the word "understand." But, as contended by plaintiff's counsel, even if the word should be considered as used in its generally accepted meaning so that it would appear that he had not actually seen the locomotive at the time the whistle was blown, he still testified that according to his impression the whistle was blown while the engine was at the crossing, being guided in all probability in that conclusion by his hearing, and we are not impressed that it can be said that there was no testimony that would warrant the submission of his theory of the accident to the jury. The blowing of the whistle at the crossing was denied by the witnesses produced by the defendant, who testified that the whistle was blown before or at the time the engine reached the whistling post. The testimony seems to be undisputed that the whistle was blown only once, so the real question at issue in the case was, Where was the whistle blown? Upon the record as made, the testimony of disinterested witnesses is most convincing that the plaintiff was mistaken in his testimony upon this disputed fact, but as the question of the weight of the evidence is

not before us, we are constrained to come to the conclusion that it was the duty of the trial judge, on the record as made, to submit to the jury the question whether or not, if the plaintiff's version of the accident is to be believed, that the whistle was blown at the crossing, the employees of the defendant exercised such reasonable diligence and care as they should have under the circumstances which existed at the time. If the jury believed that the engineer did see, or should have seen, the predicament that the plaintiff was in with his horse in close proximity to the track, and notwithstanding seeing the situation as it was presented, he blew the whistle on the crossing in close proximity to the horse, and this frightened the horse and caused the accident, we think that actionable negligence on the part of the defendant was made out. For a general discussion of the law on this subject, see note in 3 L. R. A. (N. S.) p. 111. The rule is well stated by Mr. Justice BLAIR in *Foster* v. *Lumber Co.,* 141 Mich. 316, where it was said:

"It is well settled that a railroad company is not liable for the fright of horses resulting from the ordinary use, movement, or situation of its engines, cars, or trains, and that it has a lawful right to make all such noises as are necessarily connected therewith. It may, however, become liable if in such use of its property it does anything unusual or unnecessary, naturally calculated to frighten ordinarily well-broken and gentle horses. 2 Thompson on Negligence, § 1908; *Hinchman* v. *Railroad Co.,* 136 Mich. 341 [65 L. R. A. 553]; *Geveke* v. *Railroad Co.,* 57 Mich. 589; *Dunn* v. *Railroad Co.,* 124 N. C. 252 [32 S. E. 711]; *Petersburg R. C.* v. *Hite,* 81 Va. 767."

See, also, *Dotson* v. *Railroad Co.,* 187 Mich. 650, at p. 653.

There is no merit in the contention of the plaintiff that there was actionable negligence on the part of the defendant in not having blown the whistle at the

distance fixed by the Michigan statute from the crossing (2 Comp. Laws 1915, § 8302), for the reason that while the plaintiff himself testified that he heard no whistle blown until the train got to the highway, he says that he did see the train coming at a distance at least equal to the distance at which it was obligatory to have the whistle blown in accordance with the statute. Having seen the train at that distance, the failure to blow the whistle could not in any way be said to have been the proximate cause of the accident. He testified that the train might have been a quarter of a mile away when he first saw it, and then he immediately started for his horse to get hold of it. Whether or not, under the circumstances, he acted as a reasonably prudent person should have acted, and whether under the circumstances any negligence on his part contributed to the accident, were questions which were also proper to submit to the jury.

Upon a review of this record we are satisfied that the negligence of the defendant and the contributory negligence of the plaintiff were questions which should have been submitted to the jury with proper instructions. The judgment is therefore reversed and a new trial granted, with costs to the appellant.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.