## Chicago Title & Trust Company, Administrator, Appel= lee, v. Chicago & Eastern Illinois Rail= road Company, Appellant.

## Gen. No. 16,115.

INSTRUCTIONS—*when peremptory should be given predicated upon the opinion rendered upon a former appeal.* If an opinion be rendered upon one appeal in which it is held that the doctrine *res ipsa loquitur* has no application, and otherwise there was no evidence justifying a recovery, upon a succeeding trial, a peremptory instruction should be given for the defendant if the additional evidence offered was merely cumulative of that contained in the previous record.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the HON. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed. Opinion filed February 6, 1912.

CALHOUN, LYFORD & SHEEAN, for appellant; E. H. SENEFF, of counsel.

JOHN C. TRAINOR, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court.

This is the second appeal of this case. After this appeal was taken John Reilly died and The Chicago Title & Trust Company, administrator, has been substituted as appellee. On the first trial there was a verdict and judgment for $6,500, which was affirmed by this court. The judgment, however, was reversed by the Supreme Court. C. & E. I. R. R. Co. v. Reilly, 212 Ill. 506. On a second trial of the case in the Circuit Court there was a verdict of a jury for $20,000. A *remittitur* of $7,500 was filed, and a judgment was entered upon the verdict after such *remittitur* of $12,-500. The record made at this last trial is now brought before us on appeal for review.

The injuries sustained by the appellee's intestate are claimed to have been occasioned by his being struck by a piece of timber projecting from a car in a train of the appellant. The accident happened at the intersection of appellant's track and Dearborn street, near 115th street, in Chicago, on October 30, 1897, at about 8:00 p. m.

The testimony in the case is substantiallly the same as that in the previous record, with the exception of the testimony of one witness, namely Joseph E. Farley, which will hereinafter be referred to.

There was no evidence before the court on the last appeal to show how the car of lumber from which the timber which caused the accident projected was loaded—whether skillfully or otherwise—or whether the projecting timber was the result of accident or negligence, or how long it had been in the position it was when it caused the injury.

The presiding judge at the first trial permitted the verdict to stand, and his decision in that regard was sustained by this court on the theory that the maxim *res ipsa loquitur* applied. In reversing the case the Supreme Court held that it did not belong to that class of cases where the rule could be applied, and that for that reason the peremptory instruction offered by the Railroad Company, appellant, should have been given. The court in its opinion after making a succinct statement of the facts, used the following language: ''There is nothing to show that the projecting timber, even if it can be said it would be evidence of negligence if intentionally allowed to remain in the position it was, had been so long projecting that the appellant could or should have had notice thereof.''

The testimony of Joseph E. Farley was to the effect that he was a private detective by profession; that on the evening of October 30, 1897, he happened to be at the depot in Chicago Heights, a station on the line of appellant's railroad, thirteen miles south of Kensington; that while at this station, between six and seven o'clock in the evening, and after it was dark, he saw a freight train go north at a speed too fast for any of the train men to get off and again board the train; that the train did not stop at Chicago Heights; that none of the train men got off to register or do anything of that sort, but as the train went through Chicago Heights the witness observed (to use his own language) ''some very heavy timber piled three or four feet high, loaded on two flat cars. The timbers extended over both cars. One thing particularly that my attention was attracted to was three sticks or sleepers placed in between the heavy timbers. One of them stuck out about two and a half or three feet, I should judge, on the left hand side of the car facing the engine.'' This testimony was taken about twelve years after the accident. The witness, however, claimed to remember the occurrence distinctly because it was

Hallowe'en and because about six weeks after the accident he happened to be in Kensington and heard some one talk in a saloon concerning the accident having occurred there. He testified that he talked to no one about the matter until five or six months later, when he was called upon by someone from the office of the attorney for the appellee, and that he had been interviewed in regard to the case not less than twelve or fifteen times before the trial.

The proof shows that Chicago Heights is thirteen miles south of Kensington; that between Chicago Heights and Kensington there was but one side track, and no regular stopping place for freight trains. It was also shown that north from Momence or Danville the first yard or inspection point was north of Kensington, at what was known as Oakdale yard, which is some distance north of where the accident occurred.

In the opinion of the Supreme Court in passing upon the case, the following language is used:

"In the case at bar the plaintiff was standng on a street crossing, and the appellant only owed him the same duty that it owed the public in general,— that is, reasonable diligence and care to avoid injury. So far as any thing in the record discloses, the injury sustained by the plaintiff was the result of a pure accident, and for such the law provides no compensation. (Lewis v. Flint and Pere Marquette Railway Co., 54 Mich. 55.) The only evidence the record contains with reference to the promoting cause of the injury would indicate it to have been the result of accident. Brown, the only eye witness to describe the projecting timber which it is claimed struck the plaintiff, stated: 'I noticed lumber on the train. The sleepers under the timbers on the car slipped.' The witness also stated that the night was so dark and foggy and no light near, that he could not see the plaintiff, who was just across the street. So, while he did testify that the timber projected about eighteen inches or two

feet beyond the side of the car, the conditions were not such as to preclude the possibility of mistake in the estimate of the witness. There is no evidence as to how, when or where the car was loaded or how long a time the timber had been projecting from the car. The condition can be accounted for as readily on the hypothesis of pure accident and absence of negligence as upon the ground of negligence, and the rule is well settled that negligence cannot be presumed where nothing is done out of the usual course of business unless that course itself is improper.''

The appellee insists that the testimony of Farley, which is all that differentiates the record from that of the previous trial, warranted the refusal of the trial court to direct a verdict under the law applicable to the case as announced by the Supreme Court in its opinion heretofore referred to.

The declaration is in two counts. The negligence alleged in the first count is that the cars in question were so negligently loaded with timber that a piece thereof projected. Counsel for appellant contend, and in this we agree, that the testimony of Farley would not establish the fact that the cars were negligently loaded, and therefore would not be proof of the negligence averred in the first count.

In the second count the negligence alleged is that the train was so operated and managed that the said piece came to project, and that the defendant well knew of the dangerous and unsafe condition of the said freight train. If the language of the second count is to be construed as though it read: ''The defendant well knew *or ought to have known* of the dangerous and unsafe condition of its said freight train,'' etc., can it be said that the testimony of Farley was of such a character as to establish the charge of negligence as made in this count so construed? As will have been noticed, the testimony of Brown at the first trial was to the effect that the timber extended from the car

eighteen inches to two feet. At the last trial he stated that it extended not less than two and a half feet. Farley's testimony was to the effect that one of the pieces of timber stuck out two and a half or three feet; that it was on the left hand side of the car facing the engine. It was a dark night and between six and seven o'clock when Farley claims to have observed the train at Chicago Heights.

The well known rule is conceded by the appellee to be that when a cause is reversed by an appellate tribunal and remanded for a new trial, the principles announced by the appellate tribunal in its opinion on a retrial of the case in the court to which the case is remanded must control. Spring Valley Coal Company v. Patting, 210 Ill. 342. The same rule is of course controlling upon this court on reviewing a case retried in the court to which it had been remanded by the Supreme Court.

Is the testimony of Farley cumulative merely to the testimony of Brown upon the proposition that the timber was extending out from the car? Or is it to be said that the testimony of Farley that he saw a projecting timber on a car in a train passing Chicago Heights, thirteen miles from the place of the accident, an hour and a half prior to the accident, sufficient to warrant the conclusion or inference that the appellant knew or ought to have known of the condition? If the testimony is merely cumulative, then the trial court should have obeyed the instruction of the Supreme Court and directed a verdict for the appellant. Rising v. Carr, 70 Ill. 596.

After having given the matter most careful consideration, we have come to the conclusion that the testimony of Farley, if taken as true, does not show such a state of things as amounted to notice to the appellant, even if it be assumed that the timber which he says was projecting was the same one Brown observed. The Supreme Court in its opinion, impliedly at least,

expresses a doubt as to whether or not it would be evidence of negligence if the appellant had intentionally allowed the projecting timber to remain in the position it was, even if it had had notice thereof. We think the peremptory instruction requested by the appellant should have been given, in order to give effect to the law of the case as established by the Supreme Court. Inasmuch as the testimony of Farley stands uncontradicted in the record, the point we have been discussing becomes, as we understand it, a question of law, and our disposition of it may be reviewed by the Supreme Court if the case is presented to that tribunal for review.

Other grounds for reversal have been urged upon us by the appellant, such as the improper conduct of counsel for the appellee, errors in the giving and refusing of instructions, and the improper admission of testimony. We do not wish it to be assumed that by this opinion we have passed upon these questions favorably to the appellee or otherwise. Having taken the view of the case that we have, it is unnecessary for us to discuss the other errors alleged, and we refrain from doing so.

For the reasons stated the judgment of the Circuit Court will be reversed.

*Reversed.*